# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-0226

ROBERT E. CREWS, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued August 16, 2022                                       Decided April 17, 2023)

*Bryan Andersen*, with whom *Glenn R. Bergmann* and *Kelsey L. Binder* were on the brief, all of Bethesda, Maryland, for the appellant.

*Brandon A. Jonas*, with whom *Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *Carolyn F. Washington*, Deputy Chief Counsel; and *Timothy A. Campbell*, Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before MEREDITH, FALVEY, and JAQUITH, *Judges*.

MEREDITH, *Judge*, filed the opinion of the Court. JAQUITH, *Judge*, filed a concurring opinion. FALVEY, *Judge*, filed a dissenting opinion.

MEREDITH, *Judge*: The appellant, Robert E. Crews, through counsel appeals a November 16, 2020, Board of Veterans' Appeals (Board) decision that denied entitlement to an effective date prior to September 5, 2018, for the award of disability benefits for coronary artery disease (CAD), status post myocardial infarction and bypass graft. Record (R.) at 5-14. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was referred to a panel of the Court to consider whether the Blue Water Navy Vietnam Veterans Act of 2019 (Blue Water Act), Pub. L. No. 116-23, 133 Stat. 966 (codified in relevant part at 38 U.S.C. § 1116A), precludes a veteran from receiving a retroactive effective date[1] for an award of benefits under that Act for an herbicide-related condition

---

[1] Pursuant to 38 U.S.C. § 5110(a), the effective date for an award of benefits generally may be no earlier than the date of the claim leading to that award. *See Lalonde v. West*, 12 Vet.App. 377, 382 (1999). However, section 1116A permits an effective date based on a "prior claim" if certain requirements are satisfied, including that the prior claim "was denied by reason of the claim not establishing that the disease was incurred or aggravated by the service of the veteran." 38 U.S.C. § 1116A(c)(2)(B)(i).

if his or her claim was previously denied in part due to the lack of evidence of a current disability. For the reasons that follow, the Court holds that the Act does not, and therefore the Court will vacate the Board's decision and remand the matter for further proceedings consistent with this decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Coast Guard from July 1963 to July 1983.[2] R. at 2490, 2632, 2672, 2716, 3338. He filed a claim for benefits for ischemic heart disease (IHD) in September 2013, asserting that the condition began in January 1991 and was caused by in-service exposure to Agent Orange. R. at 3241-46. A VA regional office (RO) denied the claim in July 2014. R. at 2346-51. In that decision, under the heading "Evidence," the RO listed "[m]ilitary [s]ervice [p]ersonnel [r]ecords showing confirmed [Republic of Vietnam] service," and "no response . . . received" for private treatment records from a Dr. Cook at the Sanger Clinic. R. at 2347. In denying the claim, the RO found that "[t]he evidence does not show an event, disease[,] or injury in service"; service treatment records did not reflect complaints, treatment, or diagnoses of the condition; and the condition did not develop to a compensable degree within the presumptive period following discharge from service.[3] R. at 2348. The RO then noted that, under the Agent Orange Act of 1991, presumptive service connection based on herbicide exposure is warranted for specified conditions, including IHD, R. at 2348, but the RO denied "[s]ervice connection based on a relationship to herbicide exposure" because "the evidence does not show a diagnosis of a condition for which VA has found a positive association to herbicide exposure," R. at 2349. The RO further noted that IHD "did not happen in military service, nor was it aggravated or caused by service." *Id.* It is undisputed that the appellant did not file a Notice of Disagreement with that decision.

In August 2019, the appellant again sought benefits for IHD, stating that he had served "directly off the coast of Vietnam, sometimes . . . actually going ashore," and that he had seen

---

[2] Although the parties, in their initial briefs, referred to the appellant as having blue water service during the Vietnam War era, the Secretary later clarified, and the appellant conceded, that he also had brown water service. Secretary's Supplemental (Supp.) Memorandum (Memo.) at 2; Appellant's Supp. Memo. at 15. "Brown water refers to the inland waters of the landmass of Vietnam and blue water refers to the offshore waters." *Constantine v. McDonough*, 35 Vet.App. 81, 84 n.3 (2022).

[3] Certain chronic conditions are presumed to be related to service if the condition manifests to a specified degree of severity within a prescribed period of time following service. *See* 38 C.F.R. §§ 3.307(a)(3), 3.309(a) (2022).

2

"clouds of Agent Orange coming across the water after [it was] dropped in the trees." R. at 2322; *see* R. at 2240-41, 2291-95. The evidence developed as a result of this supplemental claim revealed that, in October 1991, the appellant underwent a coronary artery bypass graft, performed by Dr. Cook, to treat CAD. R. at 1535-36, 1547-48.

The record contains a March 2020 VA memorandum indicating that the appellant's herbicide exposure was conceded based on both "[his] duty on the Republic of Vietnam's inland waterways" and "[his] nautical service in the offshore eligible waters as defined in the [Blue Water Act]." R. at 964. The following month, the RO granted benefits for CAD, claimed as IHD associated with herbicide exposure, and assigned a 60% rating, effective September 5, 2019, the date of the supplemental claim. R. at 950-53, 957-58. The RO explained that service connection was "granted on the basis of presumption due to Agent Orange exposure," R. at 951, but given that the appellant's "original claim for [IHD] was denied because there was no evidence of a diagnosis[,] . . . an[] earlier effective date under the [Blue Water Act] cannot be applied to this claim," R. at 952.

The appellant sought review of the assigned effective date, asserting that his 2013 claim had been denied "only due to the fact that Agent Orange exposure at that time was interpreted to mean 'on land/inland waterway exposure'" and arguing that his effective date should be retroactive to the date of that claim. R. at 931; *see* R. at 933-34. Thereafter, the RO granted an earlier effective date of September 5, 2018, based on its finding that VA had committed a clear and unmistakable error. R. at 542-46. In that regard, the RO found that the record reflected "a compensable diagnosis of [CAD] . . . as early as 1991" and reasoned that, because CAD had been added to the list of presumed herbicide-related conditions on August 31, 2010, VA should have awarded an effective date 1 year prior to the receipt of his 2019 supplemental claim. R. at 543. The RO also denied the appellant's request for an effective date as early as the date of his 2013 claim, explaining as follows:

> To allow entitlement to an earlier effective date based on a previously denied claim, the [Blue Water Act] requires that you were denied because a diagnosed presumptive disability was of record[ but] exposure to herbicide was not conceded. As you were denied because there was no evidence of a diagnosed presumptive disability, not because herbicide exposure was[ not] conceded, entitlement to an earlier effective date prior to September 5, 2018[,] is denied.

3

R. at 544. The appellant sought direct review of that decision by the Board, averring that his 2013 claim had been denied "due to the regulations regarding herbicide exposure at that time." R. at 523; *see* R. at 525.

In the November 2020 decision on appeal, the Board denied entitlement to an effective date prior to September 5, 2018, for the award of benefits for CAD. R. at 5. The Board determined that the Blue Water Act's exception to the general rules for effective dates did not apply because the appellant's original claim had been denied "not on the basis that he did not have confirmed service in Vietnam, but on the basis that the evidence of record did not show that he had a current disability," and because the "denial was not based on a prior more restrictive definition of service in the Republic of Vietnam, . . . the general effective date rules apply." R. at 8-9. The Board also acknowledged that the record shows that the appellant had CAD "as early as 1991," but the Board found that the private treatment records showing that disability were not associated with the claims file until after the appellant filed his supplemental claim in September 2019. R. at 11. This appeal followed.

## II. ANALYSIS

### A. Legal Landscape

The history of herbicide use during the Vietnam War era and the decades of litigation that followed, including the *Nehmer*[4] line of cases, have been well documented. *See, e.g.*, *Euzebio v. McDonough*, 989 F.3d 1305, 1309-14 (Fed. Cir. 2021); *Procopio v. Wilkie*, 913 F.3d 1371, 1373-74 (Fed. Cir. 2019) (en banc); *Constantine*, 35 Vet.App. at 83-85. Thus, the Court here will note only significant developments that may provide context for the current dispute.

To begin, in February 1991, Congress passed the Agent Orange Act of 1991, which afforded veterans who served "in the Republic of Vietnam during the Vietnam era" a

---

[4] *Nehmer* is a class action in which Vietnam veterans and their survivors alleged that, in promulgating 1985 regulations governing compensation for diseases attributed to Agent Orange, VA failed to comply with the Dioxin and Radiation Exposure Compensation Standards Act. *Nehmer v. U.S. Veterans' Admin.*, 712 F. Supp. 1404 (N.D. Cal. 1989); *see Nehmer v. U.S. Veterans' Admin.*, 284 F.3d 1158 (9th Cir. 2002); *Nehmer v. U.S. Veterans' Admin.*, 32 F. Supp. 2d 1175 (N.D. Cal. 1999). In 1991, the parties entered into a stipulation and order setting forth VA's ongoing responsibilities for further rulemaking and disability payments to class members. *See Nehmer*, 32 F. Supp. 2d at 1177. One of the results of *Nehmer* is that certain Vietnam veterans may be eligible to receive effective dates for compensation earlier than the effective dates of regulatory changes that add a disease to the list of diseases presumed to be caused by exposure to Agent Orange. *See* 38 C.F.R. § 3.816 (2022).

"[p]resumption[] of service connection" if they developed certain diseases specified in that Act or identified by VA thereafter as having a "positive association with exposure to an herbicide agent." Pub. L. No. 102-4, § 2(a), 105 Stat. 11 (now codified at 38 U.S.C. § 1116).[5] Although the Agent Orange Act "did not provide for readjudication of previously denied claims," the *Nehmer* class and VA subsequently entered into a consent decree "that detailed VA's ongoing responsibilities for further rulemaking and retroactive disability payments to class members." *Constantine*, 35 Vet.App. at 83. Since then, VA has continued to add to the list of conditions subject to presumptive service connection pursuant to section 1116, including adding IHD[6] in 2010, 75 Fed. Reg. 53,202, 53,216 (Aug. 31, 2010), and there has been ongoing litigation regarding where, geographically relative to Vietnam, a veteran must have served to qualify for that presumption.

In that regard, at the time that the appellant filed his 2013 claim, VA interpreted service "in the Republic of Vietnam," 38 U.S.C. § 1116(a)(1)(A) (2012), as including service on the landmass of Vietnam and the inland waterways, *see* 38 C.F.R. § 3.307(a)(6)(iii) (effective Sept. 6, 2013, to June 18, 2015); 66 Fed. Reg. 23,166, 23,166 (May 8, 2001), and the United States Court of Appeals for the Federal Circuit (Federal Circuit) had upheld the Secretary's interpretation that the section 1116 presumption did *not* extend to "servicemembers who never set foot within the land borders of Vietnam," *Haas v. Peake*, 525 F.3d 1168, 1193 (Fed. Cir. 2008), *overruled by Procopio*, 913 F.3d 1371; *see Haas*, 525 F.3d at 1195. However, the Federal Circuit, sitting en banc in *Procopio*, overruled *Haas* in January 2019, holding that, "when the Agent Orange Act was passed in 1991, the 'Republic of Vietnam' included both its landmass and its 12 nautical mile territorial sea." *Procopio*, 913 F.3d at 1376; *see id.* at 1380. The Federal Circuit thus concluded that Mr. Procopio, who served "in the waters offshore the landmass of the Republic of Vietnam," was "entitled to a presumption of service connection" for conditions listed in section 1116 and 38 C.F.R. § 3.309(e). *Id.* at 1374, 1381.

---

[5] This presumption of service connection was initially codified at 38 U.S.C. § 316 and was later renumbered section 1116. *See* Department of Veterans Affairs Codification Act, Pub. L. No. 102-83, § 5(a), (c)(1), 105 Stat. 378, 406 (Aug. 6, 1991).

[6] Under VA regulations, "[i]schemic heart disease . . . . includ[es] [CAD] . . . and coronary bypass surgery." 38 C.F.R. § 3.309(e).

Following *Procopio*, Congress enacted the Blue Water Act in June 2019, which, in pertinent part, added the following provision to title 38 of the U.S. Code:

§ 1116A. Presumptions of service connection for veterans who served offshore of the Republic of Vietnam

(a) Service Connection.—For the purposes of [38 U.S.C. §] 1110 . . . , and subject to [38 U.S.C. §] 1113 . . . , a disease covered by [38 U.S.C. §] 1116 . . . becoming manifest as specified in that section in a veteran who, during active military, naval, or air service, served offshore of the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be considered to have been incurred in or aggravated by such service, notwithstanding that there is no record of evidence of such disease during the period of such service.

(b) Exposure.—A veteran who, during active military, naval, or air service, served offshore of the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service.

(c) Effective date of award.—(1) Except as provided by paragraph (2), the effective date of an award under this section shall be determined in accordance with [38 U.S.C. §] 5110 . . . .

(2)(A) Notwithstanding [38 U.S.C. § 5110(g)], the Secretary shall determine the effective date of an award based on a claim under this section for an individual described in subparagraph (B) by treating the date on which the individual filed the prior claim specified in clause (i) of such subparagraph as the date on which the individual filed the claim so awarded under this section.

(B) An individual described in this subparagraph is a veteran, or a survivor of a veteran, who meets the following criteria:

(i) The veteran or survivor submitted a claim for disability compensation on or after September 25, 1985, and before January 1, 2020, for a disease covered by this section, and the claim was denied by reason of the claim not establishing that the disease was incurred or aggravated by the service of the veteran.

(ii) The veteran or survivor submits a claim for disability compensation on or after January 1, 2020, for the same condition covered by the prior claim under clause (i), and the claim is approved pursuant to this section.

Pub. L. No. 116-23, § 2(a), 133 Stat. at 966-67. The statutory changes in the Blue Water Act took effect "on January 1, 2020." Pub. L. No. 116-23, § 2(g), 133 Stat. at 969.

More recently, in November 2020, the U.S. District Court for the Northern District of California addressed a motion for enforcement of the *Nehmer* consent decree and concluded that "VA was wrongfully interpreting the phrase 'Republic of Vietnam' in section 1116 as only including veterans who had boots on the ground in Vietnam and brown water Navy veterans, thereby impermissibly not affording blue water Navy veterans relief under the terms of the consent decree." *Constantine*, 35 Vet.App. at 84 (citing *Nehmer v. U.S. Dep't of Veterans Affs.*, No. CV-86-06160, 2020 WL 6508529, at *5-6 (N.D. Cal. Nov. 5, 2020) (order)). As a result of that action, blue water veterans are now eligible for "automatic readjudications" of certain prior claims and potentially eligible for retroactive compensation based on those earlier claims. *Nehmer*, 2020 WL 6508529, at *5-6.

## B. Board Decision

In the November 2020 decision on appeal, the Board denied entitlement to an effective date prior to September 5, 2018, for the award of benefits for CAD. R. at 5-12. Initially, the Board outlined the procedural history of the appellant's claims, acknowledging that he had filed a claim in September 2013 seeking disability compensation for IHD as a result of herbicide exposure. R. at 6-7. The Board explained that the RO in July 2014 had denied that claim because it found that (1) the appellant's service medical records did not reflect symptoms of or treatment for IHD, (2) there was no evidence that the condition developed to a compensable degree within the presumptive period after service, (3) "the evidence did not show a currently diagnosed disability," and (4) the appellant did not have "a diagnosed condition for which VA had found a positive association to herbicide exposure." R. at 7.

After the July 2014 RO decision, the Board continued, the appellant filed a claim in September 2019, which the RO granted in April 2020. *Id.* Specifically, the RO, "[t]hrough application of the [Blue Water Act], . . . found that the [appellant] was presumed to have been exposed to herbicide agents, and [he] had a diagnosis of [CAD]." *Id.* The Board further explained that the RO had ultimately assigned an effective date 1 year prior to the date of the appellant's 2019 claim because he "had a compensable diagnosis of [CAD] as early as 1991, and [CAD] became a[n] herbicide-related presumptive disability on August 31, 2010." R. at 7-8; *see* 38 C.F.R. § 3.114(a)(2) (2019).

The Board then summarized *Haas*, *Procopio*, the general effective date provisions, and the Blue Water Act's exception to the general effective date rules. R. at 8-9. In assessing the

appropriate effective date, the Board initially concluded that "the exception to the general effective date rules provided for by the [Blue Water] Act do[es] not apply" because the appellant's 2013 original claim was denied "not on the basis that he did not have confirmed service in Vietnam, but on the basis that the evidence of record did not show that he had a current disability," and thus the 2014 "denial was not based on a prior more restrictive definition of service in the Republic of Vietnam." *Id.*

The Board next concluded that an earlier effective date was not warranted pursuant to 38 C.F.R. § 3.816, which "implement[s] a stipulation and various court orders in the [*Nehmer*] class action litigation." R. at 9. The Board reasoned that VA had not denied a claim for IHD during the period from September 1985 to May 1989 and that, because the appellant's 2013 claim was received after 2010, when VA began recognizing IHD as a presumptive condition, the appellant "received the full presumptive evaluation of all currently applicable laws." R. at 10-11. Finally, the Board applied "the general effective date rules," R. at 9, and found that the appellant did not appeal the 2014 denial of his claim and did not seek to reopen that claim until September 2019, R. at 11. Although the Board acknowledged that the record showed that the appellant had "a heart disability as early as 1991," the Board determined that the private treatment records reflecting that disability were not associated with the claims file until after the appellant filed his supplemental claim in September 2019. *Id.* Accordingly, the Board found that the appellant was entitled to an effective date 1 year prior to the date of his claim, which is his currently assigned effective date, but no earlier. R. at 11-12.

### C. Parties' Arguments

#### 1. Initial Briefing

The appellant argues that the Board clearly erred in denying an effective date earlier than September 5, 2018, for the award of benefits for CAD based on herbicide exposure. Appellant's Brief (Br.) at 6-14. Specifically, he asserts that, in determining that the retroactive effective date provision in the Blue Water Act did not apply, the Board overlooked that the RO in July 2014 denied his claim "for multiple reasons, and *not only* because of a lack of a current disability." *Id.* at 9. As support, he highlights those parts of the RO decision in which it found that the evidence did not show an event, injury, or disease in service and that his heart condition was not incurred in or aggravated by service. *Id.* at 9-10. He contends that this reflects three bases for the RO's denial—the absence of an in-service event, a current disability, and nexus to service. *Id.* at 10. The appellant

8

argues that this is favorable evidence that the Board did not address and that it "patently undermines the Board's reasons or bases for finding that the effective date exceptions" in the Blue Water Act do not apply here. *Id.*

Next, the appellant asserts that, by finding that the original denial must have been based on a prior, more restrictive definition of service in the Republic of Vietnam, the Board imposed a higher burden than required by the Blue Water Act for a retroactive effective date. *Id.* at 10-11. More specifically, he explains that "the plain language of the statute makes clear that for the effective date exception to apply, the *only* requirement for the prior denial is that 'the claim was denied by reason of the claim not establishing that the disease was incurred or aggravated by the service of the veteran.'" *Id.* at 12 (quoting 38 U.S.C. § 1116A(c)(2)(B)(i)). The appellant posits that he satisfies the Blue Water Act's effective date exception because the RO denied his claim in July 2014 in part on the basis that his condition was not incurred in or aggravated by service. *Id.* at 13. He also avers that he could satisfy even the more restrictive test relied on by the Board because the RO in 2014 denied his claim partly on the ground that there was no in-service event. *Id.* The appellant seeks reversal of the Board's decision and a remand for the Board to grant an effective date as of the date of his original claim. *Id.* at 14. Alternatively, he argues that the Board provided inadequate reasons or bases for denying an earlier effective date, warranting a remand. *Id.* at 15.

The Secretary counters that the Board did not need to address the full text of the July 2014 RO decision because the Board correctly determined that the RO had denied the appellant's original claim based on the lack of a current disability. Secretary's Br. at 8-9. This is significant, he maintains, because "there must be a current disability" to have a valid claim. *Id.* He contends that the appellant's argument overlooks the RO's finding of no current disability and is ultimately a disagreement with the Board's weighing of the evidence. *Id.* at 9.

Regarding the Blue Water Act, the Secretary asserts that "a plain reading . . . shows that the exception to the general effective date rules only applies when the only reason for the prior denial was that there [was] no evidence 'establishing that the disease was incurred or aggravated by the service of the veteran.'" *Id.* at 9-10 (quoting 38 U.S.C. § 1116A(c)(2)(B)(i)). Further, the Secretary argues, "Congress excluded from the exception claims where the prior denial was for reasons besides not establishing that the disease was incurred or aggravated by service," *id.* at 11, including a denial based on the lack of a current disability, *id.* at 12. He contends that this exclusion

was intentional and is supported by the legislative history, which reflects that the purpose of the Blue Water Act "was to expand the presumption for diseases caused by herbicide exposure to those who served offshore of the Republic of Vietnam, whose claims were previously denied because claimants could not show actual exposure to herbicides." *Id.* at 13. Importantly, the Secretary explains, "'this is a scheme whereby a default rule is subject to an exception,'" and therefore the Court must be "'guided by the interpretive principle that exceptions to a general proposition should be construed narrowly.'" *Id.* at 14 (quoting *In re Woods*, 743 F.3d 689, 699 (10th Cir. 2014)). As for the appellant's assertion that the Board imposed too high a standard in requiring the prior denial to have been based on a more restrictive definition of service in Vietnam, the Secretary maintains that "the Board's statement [was] in line with the purpose of the [Blue Water] Act," and even if it constitutes error, the error was not prejudicial. *Id.* at 16; *see id.* at 16-18. Finally, the Secretary argues that, should the Court find that the Board misinterpreted the Blue Water Act, vacatur, rather than reversal, is the appropriate remedy. *Id.* at 19-20.

In his reply brief, the appellant reiterates that the Board did not discuss "the full contents" of the July 2014 RO decision and that the Secretary cannot make up for that deficiency in his brief. Reply Br. at 1-2; *see id.* at 1-3. He also disputes the Secretary's interpretation of the effective date exception in the Blue Water Act as applying exclusively where the *only* reason for the prior denial was the lack of in-service incurrence or aggravation, arguing that the language of the statute does not support such a reading. *Id.* at 4-6. In that regard, the appellant suggests that interpreting the Blue Water Act as prohibiting an earlier effective date when the prior denial was based on a lack of in-service incurrence or aggravation *and* a lack of a nexus would lead to absurd results. *Id.* at 8.

*2. Supplemental Briefing*

On May 16, 2022, the panel sought supplemental briefing from the parties addressing how specific language in the Blue Water Act should be interpreted. *Crews v. McDonough*, U.S. Vet. App. No. 21-0226 (May 16, 2022) (per curiam) (unpublished order). In his response, the appellant first explains that the effective date portion of the Blue Water Act requires "the prior denial to be based, in part[,] but not necessarily exclusively[,] on[] the second element of service[]connection," i.e., the lack of an in-service event. Appellant's Supp. Memo. at 1. As support, he avers that the terms "a disease," "incurred or aggravated," and "by the service" in subsection 1116A(c)(2)(B)(i) "must be read together as a complete sentence," and the words must be given their commonly understood definitions. *Id.* at 2 (emphasis omitted). And, when read in that way, the appellant

10

contends, "the text dictates that *all* elements of service[]connection are encompassed by the phrase 'the disease was incurred or aggravated by the service of the veteran.'" *Id.* at 3 (quoting 38 U.S.C. § 1116A(c)(2)(B)(i)). For that notion, the appellant relies on *Shedden v. Principi*, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004), which confirmed that "service connection" encompasses three elements—a current disability, in-service incurrence or aggravation of a disease or injury, and a nexus between the current disability and the in-service event. Appellant's Supp. Memo. at 4. Additionally, the appellant asserts, because subsection 1116A(c)(2)(B)(i) refers three times to a "claim," which indicates an intent to apply for benefits, it cannot be read as requiring that any elements of service connection have been previously established. *Id.* at 5-7. Instead, the statute "speaks to the fact that the veteran was not previously able to satisfy his burden and substantiate his claimed request for service[]connection *in its totality*" and "says nothing about a requirement that the first element of service[]connection in particular *must have been* previously satisfied." *Id.* at 6.

The appellant further contends that, although the prior denial must have been based, at least in part, on the lack of an in-service event, nothing in the statute indicates that this must have been the *only* reason for the prior denial. *Id.* at 7-8. Rather, Congress knows how to create such a restriction and did not do so. *Id.* at 8-9. Moreover, he continues, "Congress has already accounted for the fact that a disease may not be established at the filing of the claim and has already provided . . . a solution to that scenario" in 38 U.S.C. § 5110, which provides that an effective date will be either the date of the claim or the date entitlement arose, whichever is later. *Id.* at 9. In other words, "Congress has accounted for the situation where a prior denial was also based on a lack of a current disability by assigning the effective date of that claim to instead be the date entitlement arose." *Id.* at 10 (emphasis omitted). In the appellant's view, reading a requirement into subsection 1116A(c)(2)(B)(i) that the current disability requirement must have been satisfied at the time of the prior denial would nullify portions of section 5110 and would be contrary to Congress's intent "to provide retroactive compensation for *all* [b]lue [w]ater [n]avy veterans who were affected by the lack of a presumption of exposure." *Id.* at 11; *see id.* at 10-11.

The appellant continues that any interpretation of section 1116A that requires a prior denial to be based *solely* on the second element of service connection would lead to absurd results— namely, that "[i]f the claimant was not able to satisfy the second element, then he or she by default would also not be able to satisfy the third element of service[]connection." *Id.* at 12. That means

such a claim "would never be eligible for the effective date relief because the denial [wa]s not solely based on lack of in-service exposure," but also necessarily on the lack of nexus. *Id.* Moreover, under such a restricted interpretation, some cases would turn on the language used by the RO, and "Congress could not have meant the effective dates in these cases to turn on an arbitrary choice of words in previous denial notices." *Id.* at 12-13.

As for the appropriate remedy, the appellant maintains that remand is warranted because the Board failed to adequately explain "whether the prior denial was based on the failure to meet elements of service connection other than a current disability" and the Court cannot make that finding in the first instance. *Id.* at 15. The appellant, however, acknowledges that, if the fact that the July 2014 RO decision was based in part on the lack of a current disability "is alone fatal to the applicability of the effective date exception, then additional findings of fact are not necessary, and the matter is no longer open to reasonable debate." *Id.*

For his part, the Secretary maintains that the appellant is not eligible for an earlier effective date under the Blue Water Act because (1) VA denied his prior claim for the lack of a current disability and (2) he is a brown water veteran, "which would have already entitled him to the Agent Orange presumption at the time of the prior claim if he had been able to establish a current disability." Secretary's Supp. Memo. at 1-2. As to his first contention, the Secretary explains that assigning a retroactive effective date under the circumstances here would be inconsistent with the purpose of the Blue Water Act, which was to treat blue water veterans comparably to brown water veterans if the blue water veterans' claims were previously denied because they served only offshore. *Id.* at 5-6. Consistent with that purpose, he avers that the Blue Water Act should allow the effective date of an award of benefits to be "based on a prior denied claim only if the current disability had been established" at the time of the denial. *Id.* at 5.

The Secretary maintains that the text and structure of the statute also support this reading, first pointing out that the second element of service connection—an in-service event—and the third element—nexus—"are satisfied together, when establishing a claim based on presumed Agent Orange exposure under 38 U.S.C. § 1116." *Id.* at 7. Because the language of subsection 1116A(c)(2)(B)(i)—that the prior claim was denied because the claimant did not establish that the condition "was incurred or aggravated by the service of the veteran"—mirrors the language of the Agent Orange presumption in section 1116, the Secretary avers that section 1116A should have the same meaning. *Id.* at 8. Specifically, because a veteran may establish that a disease was

12

presumptively "incurred in or aggravated by service" under section 1116 by showing (1) a current diagnosis of a presumptive condition and (2) qualifying Vietnam service, the Secretary posits that a veteran must have established a current disability to qualify for the retroactive effective date under section 1116A. *Id.* He adds that section 1116A cross-references section 1116, which lends support to the argument that these phrases should be read the same way. *Id.* at 9.

As for the language "submitted a claim," the Secretary contends that, in context, it requires that the first element of service connection must have been satisfied at the time of the prior denial. *Id.* at 9-10. In that regard, because there are only two elements of service connection when the presumption of exposure operates and the statute refers only to the second element, the canon of *expressio unius est exclusio alterius* (the express inclusion of one thing necessarily means the exclusion of all other things) requires a reading that the claim was *not* previously denied by reason of the first element. *Id.* at 9-10 (quoting 38 U.S.C. § 1116A(c)(2)(B)(i)). Similarly, if Congress intended *any* previously denied claim based on herbicide exposure in the offshore waters to benefit from the effective date exception, Congress would have ended the sentence before the phrase "and the claim was denied by reason of the claim not establishing that the disease was incurred or aggravated by the service of the veteran." 38 U.S.C. § 1116A(c)(2)(B)(i); *see* Secretary's Supp. Memo. at 10.

Regarding the appellant's assertion in his reply brief that the Secretary's interpretation would lead to absurd results, the Secretary contends that a claim under the Agent Orange statutory scheme could never be denied on the basis of a lack of nexus because the presumption encompasses both the second and third elements of service connection. *Id.* at 11. He avers that it, instead, would be an absurd result to allow a retroactive award of benefits for a period during which "the [v]eteran had no disability."[7] *Id.*

Further, the Secretary maintains that the Board was legally and factually correct in concluding that the effective date exception in section 1116A did not apply because the July 2014 denial was not based solely on the appellant's failure to establish exposure to herbicides. *Id.* at 11-12. He explains that the RO in 2014 found that the evidence did not show "'a current diagnosed disability'"; listed the conditions to which the presumption of service connection based on herbicides applied, including the appellant's claimed condition; and reiterated its conclusion that

---

[7] In this case, it is undisputed that the appellant suffered from CAD at the time of the July 2014 denial, but VA had not obtained private medical records reflecting that diagnosis. *See* R. at 7, 11.

13

"'the evidence does not show a diagnosis of a condition for which VA has found a positive association to herbicide exposure.'" *Id.* at 12 (first quoting R. at 2348; and then quoting R. at 2349). The Secretary deems it important that the RO did not discuss whether the appellant's service met the requirements for presumed herbicide exposure. *Id.*

Moreover, the Secretary notes, VA has conceded the appellant's exposure to herbicides in service based on both *brown* and blue water service, as the March 2020 VA memorandum reflects. *Id.* at 12-13 (citing R. at 964). According to the Secretary, then, at the time of the July 2014 RO decision, the appellant was *already* entitled to the presumption of herbicide exposure based on *Haas. Id.* at 13. The Secretary therefore concludes that, "[b]ecause [the a]ppellant was entitled to the Agent Orange presumption under the old interpretation of service in the Republic of Vietnam," the appellant "not only fails to meet the special effective date requirement about the prior denial, but he also fails to meet the requirement that the new 'claim is approved pursuant to this section.'" *Id.* (quoting 38 U.S.C. § 1116A(c)(2)(B)(ii)). In other words, the Secretary argues that "[t]he Court can, and should, deny the appeal on the basis that [the a]ppellant had brown water service [and] would have been entitled to the Agent Orange presumption at the time of the prior decision if he had gotten over the initial hurdle of establishing a current disability." *Id.* at 15.

## D. Discussion

The parties' arguments raise a number of legal questions in addition to the panel issue outlined above.[8] However, the Board's rejection of a retroactive effective date turned primarily on its conclusion that the appellant's prior claim *was* denied "on the basis that the evidence of record did not show that he had a current disability" and, secondarily, on its determination that the prior denial was *not* based on a more restrictive definition of service in Vietnam. R. at 8-9. The Court's analysis will thus focus on whether the retroactive effective date provision in subsection 1116A(c)(2)(B) contains such limitations.

### 1. Preliminary Matter

As reflected above, the Secretary belatedly argues that the appellant is barred as a matter of law from receiving a retroactive effective date under the Blue Water Act because he had both brown and blue water service. Secretary's Supp. Memo. at 12-14. Specifically, the Secretary

---

[8] For example, if the prior claim was denied based on multiple theories (e.g., direct service connection, presumptive service connection for herbicide-related conditions, and presumptive service connection for chronic conditions), must the "incurred or aggravated by . . . service" requirement be lacking for all such theories?

maintains that "the special effective date is only available when[,] but for Congress's enactment of the [Blue Water] Act, the claim would not have been approved."[9] *Id.* at 13. In that regard, the Blue Water Act provides that a retroactive effective date may be available for an award of benefits "under" or "pursuant to" that Act. 38 U.S.C. § 1116A(c)(1), (c)(2)(A), (c)(2)(B)(ii).

Although the Board here did not discuss whether the appellant had brown water service, the Board specifically noted that the RO in April 2020, "[t]hrough application of the [Blue Water Act,] . . . found that the [appellant] was presumed to have been exposed to herbicide agents" and "granted service connection for [CAD]," which "became a[n] herbicide-related presumptive disability on August 31, 2010." R. at 7-8; *see* R. at 951-52 (April 2020 RO decision in which the RO granted service connection "on the basis of presumption due to Agent Orange exposure" but found that an "earlier effective date under the new law cannot be applied to this claim"). The Board then analyzed whether the appellant was eligible for a retroactive effective date under the "significant exception to the general effective date rules" created by that Act. R. at 8. In other words, the Board found that the appellant was awarded presumptive service connection based on exposure to herbicides during his blue water service, and the Board considered whether the effective date could be retroactive under the Blue Water Act. Because the Board found favorably that the appellant had been awarded benefits under the Blue Water Act, the Court need not, and indeed must not, revisit the propriety of that finding. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007), *aff'd in part, dismissed in part sub nom. Medrano v. Shinseki*, 332 F. App'x 625 (Fed. Cir. 2009); *see also Bond v. Derwinski*, 2 Vet.App. 376, 377 (1992) (per curiam order) ("This Court's jurisdiction is confined to the review of final Board . . . decisions which are adverse to a claimant."). The Court therefore turns to the meaning of subsection 1116A(c)(2)(B).

*2. Requirements for Retroactive Effective Date*

"When a statute is at issue, we begin with the statutory language." *McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008); *see Williams v. Taylor*, 529 U.S. 420, 431 (2000). "The

---

[9] Although, as explained below, the Court need not resolve today the extent to which brown water veterans may benefit from the favorable effective date provision in the Blue Water Act, the Court finds puzzling the Secretary's suggestion that a retroactive effective date is warranted only if the new claim "*would not* have been approved" under "the section that already existed before [enactment of the Blue Water Act]." Secretary's Supp. Memo. at 13 (emphasis added). In that regard, prior to enactment of the Blue Water Act, both blue and brown water veterans were eligible for presumptive service connection under section 1116, *see Procopio*, 913 F.3d at 1376, and the retroactive effective date provision applies to claims filed before section 1116 and its predecessor were enacted, *see* Pub. L. No. 102-4, § 2(a), 105 Stat. at 11.

statute's plain meaning is derived from its text and its structure." *McGee*, 511 F.3d at 1356; *see Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). The "plain meaning must be given effect unless a 'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner*, 1 Vet.App. at 586-87 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *see Roper v. Nicholson*, 20 Vet.App. 173, 180 (2006), *aff'd*, 240 F. App'x 422 (Fed. Cir. 2007). In assessing the language of a statute, courts review the overall statutory scheme "'so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.'" *Roper*, 20 Vet.App. at 178 (quoting 2A NORMAN J. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION, § 46:06 (6th ed. 2000)).

The first question in statutory interpretation is always "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. However, if the statute is silent or ambiguous with respect to the specific issue, the question becomes whether the agency's interpretation is based on a permissible construction of the statute. *Id.* at 843. The interpretation of a statute is a question of law that the Court reviews de novo, without deference to the Board's interpretation. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc).

### a. Criteria

As reflected above, the Blue Water Act permits the effective date for an award of benefits under that Act to be based on "the date on which [an] individual filed [a] prior claim" if, as pertinent here, the individual "is a veteran . . . who meets the following criteria":

> (i) The veteran . . . submitted a claim for disability compensation on or after September 25, 1985, and before January 1, 2020, for a disease covered by this section, and the claim was denied by reason of the claim not establishing that the disease was incurred or aggravated by the service of the veteran.

(ii) The veteran . . . submits a claim for disability compensation on or after January 1, 2020, for the same condition covered by the prior claim under clause (i), and the claim is approved pursuant to this section.

38 U.S.C. § 1116A(c)(2)(B). In identifying these as "*the* . . . criteria" for obtaining a retroactive effective date, 38 U.S.C. § 1116A(c)(2)(B) (emphasis added), Congress did not use any language that would indicate that the criteria are not exclusive (e.g., "including," "such as," or "for example"), *see Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1197 (2021) (explaining that a "list of factors [was] not exhaustive" when it was introduced by words like "'include' and 'including'"); *Mauerhan v. Principi*, 16 Vet.App. 436, 442 (2002) ("The . . . term 'such as' demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating."). Without such non-exclusive wording, it is therefore reasonable to conclude that these are the only requirements for obtaining a retroactive effective date: (1) a veteran filed "a claim for disability compensation" between September 1985 and January 2020; (2) the claim was "for a disease covered by" section 1116A; (3) VA denied the claim "by reason of the claim not establishing that the disease was incurred or aggravated by the service of the veteran"; (4) the veteran, on or after January 1, 2020,[10] "submit[ted] a claim . . . for the same condition"; and (5) VA granted "the [new] claim . . . pursuant to [section 1116A]." 38 U.S.C. § 1116A(c)(2)(B)(i), (ii). *See Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) ("'[T]he' is 'a function word . . . indicat[ing] that a following noun or noun equivalent is definite or has been previously specified by context.'"); *see also* CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/the (last visited Apr. 14, 2023) (explaining that "the" may be "used before noun phrases in which the range of meaning of the noun in limited in some way"). These criteria outline a series of chronological actions that must have been taken by the veteran and VA, and the Court will address each in turn.

---

[10] The Board did not find, and the Secretary does not contend, that the appellant would be precluded from receiving a retroactive effective date because his claim was filed prior to January 2020, *see* VA Gen. Couns. Prec. 3-2019, at 4 n.3 (Dec. 13, 2019) ("[T]he Secretary of Veterans Affairs exercised his discretion under the [Blue Water Act] to stay decisions on pending claims until the statutory amendments [went] into effect on January 1, 2020."); the Court need not address that matter.

### b. Prior Claim

To begin, the veteran must have filed a claim during the specified time period—September 25, 1985, to January 1, 2020. Those dates coincide with VA's initial promulgation of the regulation governing herbicide exposure that was invalidated in the *Nehmer* litigation and the effective date of the Blue Water Act. *See* Pub. L. No. 116-23, § 2(g), 133 Stat. at 969; Adjudication of Claims Based on Exposure to Dioxin or Ionizing Radiation, 50 Fed. Reg. 34,452, 34,458 (Aug. 26, 1985) (effective Sept. 25, 1985). Notably, that time period begins prior to the enactment of section 316 (the predecessor to section 1116) and continues after the Federal Circuit determined in *Procopio* that blue water veterans were eligible for presumptive service connection pursuant to section 1116.

The next requirement is that the prior claim was for a specified condition—"a disease covered" by section 1116A. That section identifies "a disease covered by section 1116" as those potentially eligible for presumptive service connection under the Blue Water Act. 38 U.S.C. § 1116A(a). Section 1116, in turn, provides that presumptive service connection based on "exposure to certain herbicide agents" may apply both to a list of specific conditions contained within that statutory section and to "additional disease[s]" that VA determines by regulation warrant such a presumption. 38 U.S.C. § 1116(a)(1)(A), (B); *see* 38 C.F.R. § 3.309(e) (listing conditions, including IHD, that may be presumptively service connected). Accordingly, in the prior claim, the claimant must have been seeking benefits for a condition that is now specifically listed either in section 1116 or in the VA regulation establishing additional diseases eligible for presumptive service connection based on herbicide exposure. That means, after identifying when the prior claim was filed, the *singular* focus is the condition for which the claimant sought benefits. Importantly, for purposes of the arguments before the Court, nothing in subsection 1116A(c)(2)(B)(i) mandates that the prior claim for benefits must have been based on a particular theory, such as direct or presumptive service connection, nor does it require that the veteran have alleged herbicide exposure in the prior claim.

### c. Prior Denial: "By Reason Of"

Next, section 1116A outlines the actions VA must have taken on that prior claim. Specifically, that VA denied the claim and the denial was "by reason of the claim not establishing that the disease was incurred or aggravated by the service of the veteran." 38 U.S.C. § 1116A(c)(2)(B)(i). In ascertaining the plain meaning of this language, the first question is what

the term "by reason of" connotes. The ordinary meaning of that phrase is "because of." CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/reason?q=by+reason+of (last visited Apr. 14, 2023). The U.S. Supreme Court has explained that, although this phrase "denotes some form of causation," it does not necessarily mean "sole" cause. *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1842 (2018). Rather, when, as here, the statute itself does not define the type of causation required, discerning the meaning requires examining the context. *See id.* (citing *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 265-68 (1992)).

That context here includes the phrase that immediately follows "by reason of"—"the claim not establishing." For VA purposes, a claim is defined as "a written or electronic communication requesting a determination of entitlement or evidencing a belief in entitlement to, a specific benefit." 38 C.F.R. § 3.1(p) (2022). Further, although VA has duties to notify and assist a claimant, it otherwise remains the claimant's "responsibility to present and support a claim for benefits." 38 U.S.C. § 5107(a); *see Fagan v. Shinseki*, 573 F.3d 1282, 1286 (Fed. Cir. 2009) ("It is the veteran's 'general evidentiary burden' to establish all elements of his [or her] claim." (quoting *Holton v. Shinseki*, 557 F.3d 1362, 1368 (Fed. Cir. 2009))). In other words, it is the claimant who files a claim, and it is the claimant who bears the burden of establishing entitlement to the benefit he or she seeks. Thus, the phrase "the claim not establishing" reasonably describes a situation in which the claimant failed to support his or her claim with sufficient evidence to permit VA to grant the specific benefit sought.

The next phrase, "the disease was incurred or aggravated by the service of the veteran," describes what VA found lacking in the prior claim. Putting aside for now which theory or theories of entitlement or specific elements of service connection are conveyed by that portion of the statute, the question is whether Congress's use of the phrase "by reason of" indicates that the lack of such element or elements was the sole cause for the prior denial, a necessary part of that denial, or something else. *See Husted*, 138 S. Ct. at 1842. To shed light on what Congress intended in that regard, it is instructive to first examine what elements a veteran would have needed to establish to prevail in a service connection claim prior to *Procopio* and the Blue Water Act. *See id.* at 1843 (relying on the "process of elimination" to discern what type of causation Congress intended).

Because, as discussed above, the retroactive effective date provision of the Blue Water Act does not require the veteran's prior claim to have set forth a particular theory of entitlement, the

Court will start by examining presumptive service connection[11] based on herbicide exposure at the time of the appellant's September 2013 claim. That theory required (1) service under conditions other than dishonorable, (2) duty in the Republic of Vietnam during a specified time period, and (3) development of the specified severity and in the specified timeframe of a covered disease that is not the result of willful misconduct or an intercurrent disease or injury. 38 U.S.C. § 1116(a)(1) (2012) (incorporating the requirements of 38 U.S.C. §§ 1110, 1113). If the statutory requirements were satisfied, the "disease . . . [would] be considered to have been incurred in or aggravated by" the veteran's service, and presumptive service connection would have been warranted. *Id.*; *see Winters v. West*, 12 Vet.App. 203, 209 (1999) (en banc) ("Service connection will be awarded automatically on a presumptive basis where the veteran served in Vietnam *and* has one of the enumerated diseases."), *vacated on other grounds sub nom. Winters v. Gober*, 219 F.3d 1375 (Fed. Cir. 2000); *see also Stefl v. Nicholson*, 21 Vet.App. 120, 122 (2007) ("Service connection [pursuant to section 1116] is available for [listed] conditions without a claimant's showing a nexus between service and the condition."). That means a claimant need not have "establish[ed]," 38 U.S.C. § 1116A(c)(2)(B)(i), by direct evidence, that a condition was "incurred in or aggravated by . . . service," 38 U.S.C. § 1116(a)(1). Instead, whether a disease was incurred in or aggravated by service would have been VA's ultimate conclusion, which in turn would have depended on whether the claimant met the criteria listed above.[12] With that understanding of what was necessary for presumptive service connection, it is clear that Congress, in the Blue Water Act, could not have intended failure to establish that "the disease was incurred or aggravated by . . . service" to be the sole cause for the prior denial.

Moreover, establishing *direct* service connection in September 2013, as now, generally would have required evidence of (1) a current disability, (2) incurrence or aggravation of a disease or injury in service, and (3) a nexus between the claimed in-service injury or disease and the current disability. *Shedden*, 381 F.3d at 1166-67; *see Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)

---

[11] The Court notes that the retroactive effective date provision in the Blue Water Act is potentially applicable when a veteran filed a prior claim between September 1985 and January 2020, which includes the 6-year period before the Agent Orange Act—which created a general presumption of service connection based on herbicide exposure—was enacted. *See* Pub. L. No. 102-4, § 2(a), 105 Stat. at 11. However, the claim at issue here was not filed during that window.

[12] Similarly, for chronic conditions subject to presumptive service connection, "incurred or aggravated by . . . service" is not directly what the claimant must establish; it is a VA adjudicative determination that flows from VA finding that a chronic condition arose during a presumptive period and that the veteran has present manifestations of the same disease. *Walker v. Shinseki*, 708 F.3d 1331, 1335 (Fed. Cir. 2013); 38 C.F.R. § 3.303(b) (2022).

("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis."). Because each element must be present to establish direct service connection, *see Fagan*, 573 F.3d at 1287, it follows that a denial could have been predicated on the absence of one, two, or three elements.

If Congress had intended the pivotal phrase here—"the disease was incurred or aggravated by . . . service"—to refer to the second *Shedden* element (the in-service event), it is not reasonable to conclude that Congress intended that to be the *sole* cause for the prior denial because, in the absence of an in-service event, a veteran also could not satisfy the third element of *Shedden*, a nexus between the current disability and an in-service event. *See, e.g.*, *Reonal v. Brown*, 5 Vet.App. 458, 461 (1993) (holding that "[a]n opinion based upon an inaccurate factual premise"—for example, that there was an in-service event—"has no probative value"); *West v. Brown*, 7 Vet.App. 70, 77-78 (1994) (holding that an examination that relies on an inaccurate history is inadequate for rating purposes); *see also* Appellant's Supp. Memo. at 12. Indeed, it would be nonsensical to require that a prior denial be based solely on the lack of one factor if another factor would also necessarily be lacking.

If, on the other hand, Congress intended to refer to both *Shedden* elements two and three, or even to all three elements, *see* Appellant's Supp. Memo. at 3-4, it is similarly unreasonable to conclude that Congress meant "by reason of" to convey "sole cause," because that would require reading section 1116A as specifying that the lack of two or three elements must have been the "sole" cause for the prior denial. Such an unnatural reading is untenable. *See Wilson v. McDonough*, 35 Vet.App. 75, 78 (2021) (interpreting a phrase according to the "most natural reading").

In sum, the best reading of "by reason of" is that it does not signal the *only* cause for the prior denial.[13] Taking all this into account, the language thus far indicates that the veteran must have previously sought benefits for a condition that is now considered presumptively related to

---

[13] The Court is compelled to point out that, even though Congress explicitly conditioned an earlier effective date on the grounds for a prior denial, regional offices prior to 1990 had no obligation to specify the reasons for decisions. *See Crippen v. Brown*, 9 Vet.App. 412, 420 (1996) (noting that RO decisions "rendered before February 1, 1990, when 38 U.S.C. § 5104(b) was added to require RO decisions to specify the evidence considered and the reasons for the disposition[,] . . . routinely lacked such specificity" (citations omitted)). However, because the prior decision here postdates 1990 and the parties concede that the RO in 2014 provided reasons for its decision, the Court will not today address how the law could be applied when no such reasons were provided.

herbicide exposure, and VA must have denied the claim, at a minimum, because the claimant did "not establish[]" that "the disease was incurred or aggravated by . . . service." 38 U.S.C. § 1116A(c)(2)(B)(i).

### d. Prior Denial: Not Incurred or Aggravated by Service

The next question is what Congress meant by the phrase "the disease was [not] incurred or aggravated by . . . service." We need not definitively answer that question today, however, because the principal dispute here is whether the prior denial could *not* have been based in part on the lack of a current disability and, secondarily, whether it must have been affirmatively based on a more narrow definition of service in Vietnam.[14] Thus, we examine only whether the statute answers those questions. *See Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1337-38 (Fed. Cir. 2007) (explaining that, under the doctrine prohibiting advisory opinions, "federal courts are to decide only 'actual controversies by judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in the case before it'" (quoting *Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union v. Missouri*, 361 U.S. 363, 367 (1960))); *Norvell v. Peake*, 22 Vet.App. 194, 200 (2008).

In that regard, the Secretary avers that, because the language "incurred or aggravated by . . . service" largely mirrors the wording in section 1116(a) regarding presumptive service connection based on herbicide exposure, the phrases have the same meaning.[15] Secretary's Supp. Memo. at 7-8. Specifically, he avers that, under section 1116, the second and third *Shedden* elements, in-service event and nexus, are "satisfied together" by operation of law when a claimant has a current diagnosis of a presumptive condition and qualifying Vietnam service. *Id.* Accordingly, he maintains, the same language in section 1116A must indicate that the current disability was previously established in that a current disability would have been necessary to trigger possible presumptive service connection. *Id.* at 8. However, to the extent that the Secretary suggests that the prior adjudication must have addressed only a theory of *presumptive* service connection, the

---

[14] Indeed, the Board in the decision on appeal did not acknowledge or seek to apply the "incurred or aggravated by . . . service" requirement of the Blue Water Act; it instead characterized the Act as requiring that a prior denial be "based on the more restrictive definition of service in the Republic of Vietnam." R. at 8.

[15] The Court notes that the language "incurred or aggravated by . . . service" in section 1116A also closely mirrors the language in 38 U.S.C. § 1112(a)(1), establishing a presumption of service connection for certain chronic conditions.

Court notes that the retroactive effective date provision encompasses claims filed before section 1116 and its predecessor had been enacted. *See* 38 U.S.C. § 1116A(c)(2)(B)(i) (conditioning eligibility for an earlier effective date in part on the veteran having filed a prior claim "on or after September 25, 1985, and before January 1, 2020"); *see also* Pub. L. No. 102-4, § 2(a), 105 Stat. at 11 (creating the section 316 presumption of service connection); *Nehmer*, 2020 WL 6508529, at *2-3 (explaining that, prior to enactment of the Agent Orange Act in 1991, VA by regulation had provided that only one disease, chloracne, should be deemed related to herbicide exposure).

More importantly, as explained above, section 1116A does not require the veteran to have previously sought presumptive service connection or even to have alleged herbicide exposure; rather, the only requirement is that the veteran sought benefits for a condition that is *now* considered presumptively related to herbicide exposure. It follows, then, that in specifying the reason that VA denied the claim, Congress did not set forth grounds applicable to only presumptive service connection—a theory that, even if in existence, may or may not have been raised. *See Atencio v. O'Rourke*, 30 Vet.App. 74, 83 (2018) (citing *United States v. Wilson*, 503 U.S. 329, 334 (1992) ("[A]bsurd results are to be avoided.")). And, even if the language encompasses previous denials on a presumptive basis, it does not identify which of the factors discussed above— including service in the Republic of Vietnam and development of a disease in the requisite timeframe—were either established or lacking, nor does it specifically exclude denials based on insufficient evidence of a current disability. *See Bates v. United States*, 522 U.S. 23, 29 (1997) (holding that a court must resist reading words into a statute that do not appear on its face). The Secretary's contentions in this regard are thus unavailing.

Moreover, the phrase "the disease was incurred or aggravated by . . . service" cannot otherwise be read as specifying either that the first *Shedden* element—a current disability—must have been affirmatively established at the time of the prior denial or that a lack of evidence of a current disability could not have been one basis for the denial. Importantly, because subsection 1116A(c)(2)(B)(i) describes what was "*not* establish[ed]" previously, it would be contrary to the natural reading to conclude that it specifies what *was* established. *See Wilson*, 35 Vet.App. at 78. Additionally, the only words that potentially invoke the first *Shedden* element are "the disease," *cf. Shedden*, 381 F.3d at 1166-67 (explaining that service connection encompasses three elements, including a current disability), and the Court is not persuaded that, by using "*the*," Congress was conveying that the claimant must have previously established the existence of a current disability.

*See* Oral Argument at 12:54-17:08, 32:52-33:41, 50:46-51:16, www.uscourts.cavc.gov/ oral_arguments_audio.php (argued Aug. 16, 2022). Rather, subsection 1116(c)(2)(B)(i) first refers to "a claim . . . for *a* disease covered by this section" and then 14 words later refers to "the disease." As noted above, "grammar and usage establish that 'the' is 'a function word . . . indicat[ing] that a following noun or noun equivalent is definite *or has been previously specified by context*.'" *Preap*, 139 S. Ct. at 966 (emphasis added). Thus, "the disease" is reasonably understood to refer to the "disease" mentioned earlier in the sentence, which in turn simply refers to the conditions identified as presumptive in section 1116(a) or § 3.309(e), *see supra* at 12-13. Further, as discussed above, although subsection (B)(i) identifies at least one required reason for the prior denial, it does not identify the sole cause and thus leaves open the possibility that other grounds were present. In sum, the specific criteria that Congress enumerated for a retroactive effective date simply do not include a prohibition on the prior denial having been based in part on the lack of evidence of a current disability.

e. Prior Denial: Definition of Vietnam

Aside from whether the lack of a current disability at the time of the prior claim is fatal to obtaining a retroactive effective date, the Secretary contends that it is consistent with the purpose of section 1116A to require the prior denial to have been based generally on the lack of confirmed service in Vietnam or, specifically, on a more narrow definition of service in the Republic of Vietnam, i.e., one that excluded blue water service. *See* Secretary's Br. at 16 n.2; Secretary's Supp. Memo. at 11-12. However, he points to no language in the statute itself specifying that either must have been the reason for the denial, and the Court discerns no such requirement. *See Bates*, 522 U.S. at 29. In that regard, subsection (B)(i) does not mention the "Republic of Vietnam" or "offshore" service, even though those terms are used elsewhere in the Act. *See, e.g*., 38 U.S.C. § 1116A(a), (b); *see also O'Brien v. Wilkie*, 30 Vet.App. 21, 27-28 (2018) (concluding that use of a different definition of "child" for Social Security Administration purposes reflected that "Congress knows how to include children such as the appellant's grandson in the definition of 'child' but has not done so for VA purposes"), *aff'd*, 948 F.3d 1339 (Fed. Cir. 2020).

Further, to the extent that the phrase "incurred or aggravated by . . . service" in subsection 1116A(c)(2)(B)(i) bears a resemblance to the in-service event element of *Shedden*, there are no contextual indicators that Congress intended a specific reason why the in-service prong was not previously satisfied. Similarly, to the extent that the phrase may refer to denial on a presumptive

24

basis, the statute does not list any of the criteria that would underlie a determination that a presumptive condition was not, under section 1116(a)(1), "incurred in or aggravated by" service,[16] much less specify which element must have been established or lacking at the time of the prior adjudication. All of this supports the conclusion that a retroactive effective date is not conditioned on the prior claim having been rejected on the grounds that service in the Republic of Vietnam was not confirmed.

### f. New Claim

After outlining the criteria related to the filing and denial of the prior claim, subsection 1116A(c)(2)(B) then sets forth the next chronological steps: The veteran must file a new claim "for the same condition" as the prior claim, and VA must grant "the [new] claim . . . pursuant to [section 1116A]." Because there is no dispute in the current case that the previous and new claims were for the same condition, *see Teva Pharms. USA, Inc.*, 482 F.3d at 1337-38, and because, as indicated above, the Board favorably found that the appellant had been awarded benefits under the Blue Water Act, *see Medrano*, 21 Vet.App. at 170, the Court need not address these requirements at this time.

### g. Summary

Based on the foregoing, the Court concludes that the plain language of the Blue Water Act reflects that Congress established five exclusive criteria for a veteran to receive a retroactive effective date for an award of benefits under that Act. As pertinent here, the veteran must have previously filed a claim for a condition that is now considered presumptively related to herbicide exposure, and VA must have denied that claim, at a minimum, because the appellant did not establish that the claimed disease was "incurred or aggravated by . . . service." However, those criteria do *not* prohibit a retroactive effective date when the prior denial was based in part on the lack of evidence of a current disability, and they do *not* include a requirement that the denial was predicated on the pre-*Procopio* understanding of service in the Republic of Vietnam.[17]

---

[16] As discussed above, those factors include (1) service under conditions other than dishonorable, (2) duty in the Republic of Vietnam during a specified time period, and (3) development in the specified severity and timeframe of a covered disease that is not the result of willful misconduct or an intercurrent disease or injury.

[17] To provide a final check on our statutory interpretation, the Court notes that nothing in the purpose or legislative history of the Blue Water Act suggests that Congress intended to create these specific hurdles for obtaining a retroactive effective date. *See Casey v. Wilkie*, 31 Vet.App. 260, 265 (2019) (citing *Hughes v. United States*, 138 S. Ct. 1765, 1774 (2018), for the proposition that considering the purposes behind a statutory scheme is a useful check on a court's interpretation of a specific statutory provision). In that regard, Congress explained that the Act was

E. Application

Before applying the law as outlined above to the appellant's case, the Court will briefly reiterate the Board's findings. The Board determined that the appellant's original September 2013 claim was denied "not on the basis that he did not have confirmed service in Vietnam, but on the basis that the evidence of record did not show that he had a current disability," and therefore the July 2014 "denial was not based on a prior more restrictive definition of service in the Republic of Vietnam." R. at 8-9. Accordingly, the Board concluded that "the exception to the general effective date rules provided for by the [Blue Water] Act do[es] not apply" in the appellant's case. R. at 8.

Because subsection (c)(2)(B)(i) does not address generally what definition of "Republic of Vietnam" VA must have relied on in adjudicating the prior claim, nor does it specifically address whether such a claim must have been denied based on a more restrictive definition of service in Vietnam, the Court concludes that the Board erred in inserting that requirement into the statute. Although the Secretary contends that this error was harmless, Secretary's Br. at 16-18, his argument rests on the assertion that "the Board still would have found that the [Blue Water] Act's [effective date] exception did not apply because the prior denial was because there was a lack [of] evidence establishing a current disability," *id.* at 18. The Court, however, held above that the statute does not prohibit a retroactive effective date if a prior claim was denied based in part on the lack of a current disability. Thus, to the extent that the Board found that the retroactive effective date provision was inapplicable in this case because the appellant's original claim was denied based in part on the lack of evidence of a current disability, the Board erred. And, that erroneous Board finding thus cannot support VA's assertion of harmless error.

Moreover, although the Board set forth at least some of the grounds on which the RO denied the appellant's claim in 2014—including that the appellant's service medical records did not reflect symptoms of or treatment for IHD and that there was no evidence that IHD developed

---

intended to "codify" the Federal Circuit's *Procopio* decision and define the term territorial seas. H.R. Rep. No. 116-58, at 11-12 (2019). More specifically, Congress explained as follows:

> [B]ecause [blue water] veterans have generally been unable to successfully apply for benefits for conditions that may have been caused by service in Vietnam due to the lack of a presumption of exposure, [the Blue Water Act] would provide retroactive benefits for veterans who were denied benefits between September 1, 1985, and January 1, 2020, if the individual veteran . . . re-files a claim for benefits.

*Id.*

26

to a compensable degree within the presumptive period after service, R. at 7—the Board did not address the full scope of the RO's earlier findings. *See, e.g.*, R. at 2349 (finding that IHD "did not happen in military service, nor was it aggravated or caused by service"). The Board also did not make any findings as to which theories of service connection the RO rejected in July 2014; which, if any, of those theories should be considered for purposes of subsection 1116A(c)(2)(B)(i); and, for any relevant theories, whether the RO in July 2014 determined that the claimed disease was not "incurred or aggravated by the service of the veteran." 38 U.S.C. § 1116A(c)(2)(B)(i).

Because factual questions remain, reversal—the remedy the appellant initially sought, *see* Appellant's Br. at 6—is not warranted. *See Gutierrez v. Principi*, 19 Vet.App. 1, 10 (2004) ("[R]eversal is the appropriate remedy when the only permissible view of the evidence is contrary to the Board's decision." (citing *Johnson v. Brown*, 9 Vet.App. 7, 10 (1996)); *Pond v. West*, 12 Vet.App. 341, 346 (1999) (holding that remand is the appropriate remedy when the Board failed to ensure proper development of the claim or the record is inadequate for adjudication purposes); *Tucker v. West*, 11 Vet.App. 369, 374 (1998) ("[W]here the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is the appropriate remedy."). Instead, remand is required for the Board to address these matters in the first instance. *See Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) ("[A]ppellate tribunals are not appropriate fora for initial fact finding.").

Given this disposition, the Court will not now address the remaining arguments and issues raised by the appellant. *See Quirin v. Shinseki*, 22 Vet.App. 390, 395 (2009) ("[T]he Court will not ordinarily consider additional allegations of error that have been rendered moot by the Court's opinion or that would require the Court to issue an advisory opinion."); *Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and the Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112.

### III. CONCLUSION

After consideration of the parties' pleadings, a review of the record, and oral argument, the Board's November 16, 2020, decision is VACATED, and the matter is REMANDED for further proceedings consistent with this opinion.

JAQUITH, *Judge*, concurring: I concur with all of the Court's thorough and well-written opinion. I write separately to emphasize that the facts and circumstances of this case demonstrate that the Board's misleading characterization of VA's decision on the veteran's original claim and the Board's failure to meaningfully address 38 U.S.C. § 1116A(c)(2)(B)(i) as written require that the Board's decision be vacated and the case remanded for readjudication.

To start with the law, statutory construction is limited to construing the words Congress used; it does not involve actually constructing the statute by adding words. In the United States' tripartite government, the legislative branch writes the law, the executive branch executes it, and courts such as this one provide independent judicial review. *See, e.g., Mistretta v. United States*, 488 U.S. 361, 371 (1989) ("[T]he principle of separation of powers . . . underlies our tripartite system of Government."); *see also In re Triton Chem. Corp.*, 46 F. Supp. 326, 330 (D. Del. 1942) ("In view of the 'trinitarian categories' of our government, it is too late now to talk about the lack of authority in courts to indulge in efforts to effect judicial legislation."); *Prewitt v. McDonough*, 36 Vet.App. 1, 17-30 (2022) (order) (Jaquith, J., concurring) (describing the creation, structure, and function of this Court). Our judicial function is "to apply statutes on the basis of what Congress has written, not what Congress might have written." *United States v. Great N. Ry. Co.*, 343 U.S. 562, 575 (1952). And "[i]t is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" *Rotkiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 94 (2012)).

The dissent embraces these principles but gets the math wrong, accusing the Court of revising the statute by subtracting the entire salient clause of 38 U.S.C. § 1116A(c)(2)(B)(i): "by reason of the claim not establishing that the disease was incurred or aggravated by the service of the veteran." *Post* at 34. That accusation is baseless, for there is no subtraction; Judge Meredith's exhaustive analysis of section 1116A(c)(2)(B)(i) gives effect to every word. The Secretary and the dissent depend on the *addition* of a word—"only."[18] The Secretary argues that "[a] plain reading of the [Blue Water Navy] Act shows that the only reason for the prior denial must be that the 'claim

---

[18] It is true, of course, that Judge Falvey does not expressly inject the word "only" into section 1116A(c)(2)(B)(i), as the Secretary does. *See post* at 36 n.25. But that construction is implicit in his determination that the RO's statement that "[t]he evidence does not show a current diagnosed disability," R. at 2348, renders the RO's invocation of the service connection elements covered by section 1116A(c)(2)(B)(i) inoperative. In other words, the distinction between Judge Falvey's position and the Secretary's is one without meaningful difference.

was denied by the reason of the claim not establishing that the disease was incurred or aggravated by the service of the veteran.'" Secretary's Br. at 10-11, 14 (quoting 38 U.S.C. § 1116A(c)(2)(B)(i)). But that is obviously not true. The condition precedent to a retroactive effective date spelled out in section 1116A(c)(2)(B)(i) is that a prior claim for disability compensation for a covered disease "was denied by reason of the claim not establishing that the disease was incurred or aggravated by the service of the veteran." 38 U.S.C. § 1116A(c)(2)(B)(i).

The statute does not require that the prior claim was denied "only by reason of" or "solely by reason of," just "by reason of." Congress knows how to say "only by reason of" or "solely by reason of" when that is what it means—in title 38 and otherwise. *See* 38 U.S.C. § 3202(1)(D)(ii) ("only by reason of"); 38 U.S.C. §§ 1505, 1720J(f)(4), 1965(9), 2408(i)(1) ("solely by reason of"); *see also, e.g.,* 10 U.S.C. §§ 850a, 876b(b)(1), 1370(b)(6), 1370a(c)(3)(D) and (d)(4), and 26 U.S.C. § 134(b)(6) ("only by reason of"); *see also* 10 U.S.C. § 1145(d)(3), 8024(c); 37 U.S.C. § 403(n)(1); 42 U.S.C. § 417(f)(1), and 50 U.S.C. §§ 4025, 4104(h), 4329(a)(2)(D) ("solely by reason of").[19] Congress used explicit language in these statutes, specifying when it intends to limit the applicability of a provision to action taken only or solely by reason of a certain condition precedent; this weighs against inferring such a limitation when it is unstated. *See Cooper v. McDonough*, 33 Vet.App. 341, 351 (2021), *aff'd*, 57 F.4th 1366 (Fed. Cir. 2023).

The Secretary argues that "Congress could not have intended for a [v]eteran . . . to be paid retroactive benefits to cover a period . . . when the Veteran had no disability." Secretary's Supp. Memo. at 11. And the dissent discusses what would or should happen if the statute worked as Congress must have intended. *Post* at 33-36. But "'[i]t is not for us to rewrite the statute so that it covers only what we think is necessary to achieve what we think Congress really intended,'" or for us to supplant the text to address policy concerns. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2381 (2020) (quoting *Lewis v. Chicago*, 560 U.S. 205, 215 (2010)). At most, such woulda-coulda-shoulda analysis is indicative of interpretative doubt or ambiguity that brings the pro-veteran canon to bear, necessitating statutory construction in the veteran's favor. *See Henderson v. Shinseki*, 562 U.S. 428, 441-42 (2011) (holding that the "most telling indicators of Congress's intent are the singular characteristics of the review scheme that

---

[19] The cited statutes involve veterans or military service. Congress demonstrated its ability to specify when it means "only by reason of" or "solely by reason of" in many other U.S. Code provisions. VA has demonstrated the same ability in promulgating regulations. *See* 38 C.F.R. §§ 17.96(a)(2), 21.5926(c)(4)(ii) (2022) ("solely by reason of").

Congress created for the adjudication of veterans' benefits claims," which include "'the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor'" (quoting *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220–21 n.9 (1991))); *see also Brown v. Gardner*, 513 U.S. 115, 118-21 (1994) (looking to the pro-veteran canon—"the rule that interpretive doubt is to be resolved in the veteran's favor"—in assessing a statute's "text and reasonable inferences from it").

In addition, the Secretary's suggestion that the veteran might receive retroactive benefits for a time when he had no disability is misplaced. The veteran acknowledges that section 1116A(c)(2)(A) must be read with 38 U.S.C. § 5110, so the effective date is set by the later of the date of the prior denied claim or the date the facts show that entitlement arose. Appellant's Supp. Memo. at 9-10; *see* 38 U.S.C. § 5110(a) (providing that the effective date of an award of disability compensation "shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor"); 38 C.F.R. § 3.400 (2022) (providing that the effective date "will be the date of receipt of the claim or the date entitlement arose, whichever is later").

Moreover, we are deciding a real case based on what actually happened, not what would, could, or should have happened. And we don't have to deploy any special skills to discern or deduce why VA denied the veteran's original claim in July 2014. The RO was very explicit that it denied the veteran's claim because the claim did not establish that his IHD was incurred or aggravated by his Navy service, just as section 1116A(c)(2)(B)(i) requires. R. at 2348. The RO highlighted that "[t]he evidence does not show an event, disease or injury in service" as the RO's first, most prominent reason for denying service connection.[20] *Id.* Then the RO elaborated that the veteran's "service treatment records do not contain complaints, treatment, or diagnosis for [his IHD]." *Id.* Then the RO elaborated further that the evidence did not show that the veteran's IHD "developed to a compensable degree within the specified time period after release from service to qualify for the presumption of service connection." *Id.* That's three consecutive sentences explaining that the veteran's claim was denied "by reason of the claim not establishing that the disease was incurred or aggravated by the service of the veteran." 38 U.S.C. § 1116A(c)(2)(B)(i).

---

[20] To establish service connection for a claimed disability, a veteran must show "(1) the existence of a present disability, (2) in-service incurrence or aggravation of a disease or injury, and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." *Shedden v. Principi*, 381 F.3d 1163, 1166–67 (Fed. Cir. 2004).

Only after that, in the fourth sentence, did the RO note that "[t]he evidence does not show a current diagnosed disability." R. at 2348.

Next, the RO devoted a paragraph to describing the conditions that VA presumes are service connected based on exposure to herbicides used in Vietnam, including IHD. R. at 2348-49. Then the RO repeated, quite clearly, that it found no basis for service connection for the veteran's IHD because "[t]his condition did not happen in military service, nor was it aggravated or caused by service"—again invoking language aligned with section 1116A(c)(2)(B)(i). R. at 2349.

The curious list of the evidence the RO considered in reaching that decision, R. at 2343, 2347, may hint at why the RO buried what VA now says is the lead—that the veteran had no disability.[21] The 2014 rating decision lists the evidence as including the following:

"● Examination, VA Medical Center (VAMC), Richmond, VA, dated

● Private treatment reports, The Sanger Clinic, Dr. Cook ( no response was received)."

R. at 2343, 2347. Dr. Cook was the attending surgeon for the veteran's 1991 coronary artery bypass graft, necessitated by the veteran's "severe coronary artery disease" at age 46. R. at 1547. The veteran's open heart surgery required cutting through his sternum and then closing it with wire and closing his skin with "35 wide surgical staples." R. at 1547-48.

In his September 2013 claim, the veteran described his heart disease as dating from 1991. R. at 3241. Though the record before the Court is sparse—and what evidence the RO had and considered is not addressed beyond the evidence listing—the RO obviously knew when it denied his claim that the veteran had been treated by Dr. Cook and examined at Richmond's VA Medical Center. R. at 2343, 2347. The veteran later wrote that he had included the Sanger Clinic medical records with his September 2013 claim. R. at 523. The veteran also said, "I received a C[ompensation] and P[ension] exam at the Richmond, VA VAMC and the exam would DEFINITELY have revealed my heart condition and the huge scar that remains from my surgery." R. at 523. And it is undisputed that the veteran has had his heart disability from at least 1991. R. at

---

[21] The dissent offers that the structure of the RO's adjudication may reflect its "propensity towards boilerplate." *Post* at 37 n.26. Any such propensity fails claimants, each of whom is entitled to fair, individualized assessment of her or his case. Moreover, whether the structure of its rating decision is thoughtless or strategic, the RO is accountable for what it said, and how. In this case, the RO addressed the service connection elements in 1116A(c)(2)(B)(i) first and the evidence of the veteran's disability last—the reverse of their order in *Shedden*. *See Shedden*, 381 F.3d at 1166–67. As described below, an RO and the Board later reimagined what the July 2014 RO did. The Court cannot follow suit.

7-8, 11, 90-91, 523, 543, 1535-48. Whatever the 2014 state of VA's fulfillment of its duty to assist (in getting the Richmond VA records and Dr. Cook's records), it is understandable that the RO would lead with the basis for denying service connection in which it was most confident, the lack of an in-service incurrence, rather than the one it had reason to think might be wrong, the absence of a current disability. R. at 2344-45.

What is not understandable is the revisionist history that followed the veteran's August 2019 claim for disability compensation for his IHD.[22] R. at 2291-322. In an April 2020 rating decision granting service connection and a 60% disability rating for the veteran's heart condition, effective in September 2019, an unnamed RO said: "[Y]our original claim for ischemic heart disease was denied because there was no evidence of a diagnosis of ischemic heart disease."[23] R. at 952. That was a misleading half-truth that failed to mention that the RO's July 2014 rating decision also said that it denied service connection because "[t]he evidence does not show an event, disease or injury in service" and the veteran's claimed heart disease condition "did not happen in military service, nor was it aggravated or caused by service." R. at 2348-49.

The veteran sought review of the April 2020 rating decision, and in May 2020, an unnamed RO determined that the April 2020 decision was "clearly and unmistakably erroneous in not granting a separate compensable evaluation for supraventricular arrhythmia with cardiac pacemaker," and the May 2020 RO established an effective date in September 2018 for the veteran's heart disabilities. R. at 555-62.

Unfortunately, the November 2020 Board decision rests on the misleading half-truth in the April 2020 RO decision's characterization of the July 2014 RO decision, rather than the July 2014 decision itself. The Board said:

> The Veteran's original September 2013 service connection claim for ischemic heart disease was denied in a July 2014 AOJ[24] rating decision not on the basis that he

---

[22] The veteran signed his claim in July 2019, and VA refers to it as his reopened September 2019 claim, but the record reflects that it was received by VA in August 2019. R. at 957, 2291-322. The veteran submitted a statement about his Coast Guard service directly off the coast of Vietnam, saying: "we would watch clouds of Agent Orange coming across the water after they dropped it in the trees. Many times, we would actually be running the motor life boats and be completely immersed in it." R. at 2322.

[23] The April 2020 rating decision does not identify the RO that made it, R. at 950-53, so it is unclear whether it was the same RO that decided the veteran's original claim. The July 2014 rating decision was made by the Jackson, Mississippi, RO. R. at 2346-51.

[24] "AOJ" is an initialism for the agency of original jurisdiction. An AOJ "makes the initial decision on a claim for VA benefits. An AOJ is typically one of VA's 57 regional offices in the case of benefits administered by the

did not have confirmed service in Vietnam, but on the basis that the evidence of record did not show that he had a current disability.

R. at 8-9. The Board's characterization of the July 2014 RO decision dismissed without even discussing what the rating decision actually said—that it denied service connection because "[t]he evidence does not show an event, disease or injury in service" and because the veteran's claimed heart disease condition "did not happen in military service, nor was it aggravated or caused by service." R. at 2348-49. In so doing, the Board took out of context the July 2014 RO's statement that "[t]he evidence does not show a current diagnosed disability." R. at 2348.

In this case, the July 2014 RO's denial of service connection because "[t]he evidence does not show an event, disease or injury in service" and because the veteran's claimed heart disease condition "did not happen in military service, nor was it aggravated or caused by service," R. at 2348-49, amounts to a favorable finding that is binding on all subsequent Agency adjudicators and the Board unless rebutted by evidence of clear and unmistakable error (CUE). 38 C.F.R. § 3.104(c) (2022). This basis for the July 2014 RO's denial of service connection is favorable insofar as it corresponds to the terms of 38 U.S.C. § 1116A(c)(2)(B)(i) and thus could affect the effective date for the veteran's disability rating. And the May 2020 RO's CUE finding addressed only the April 2020 RO decision on a separate rating and the effective date, not the July 2014 decision's stated reasons for denying service connection. The Board mischaracterized the July 2014 rating decision by ignoring the RO's favorable finding, and the Board did not meaningfully address section 1116A(c), necessitating remand. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998).

FALVEY, *Judge*, dissenting: I agree with much of the Court's panel decision. I'm with the majority until we get to Section D(2)(c), *ante* at 18. We part ways because the Court holds that as long as a veteran previously applied for benefits for a disability that is now presumptively related to herbicides and was denied, that veteran benefits from the retroactive effective date provision of the Blue Water Act. The problem is that's not what Congress said.

True, Congress started out by saying that a veteran could obtain an earlier effective date if he or she "submitted a claim for disability compensation on or after September 25, 1985, and

---

Veterans Benefits Administration (VBA)." Board of Veterans' Appeals: Clarification of a Notice of Disagreement, 70 Fed. Reg. 37,723, 37,723 (proposed June 30, 2005) (to be codified at 38 C.F.R. pt. 19); *see* 38 U.S.C. § 5104C (outlining a claimant's options after the AOJ decides a claim).

before January 1, 2020, for a disease covered by this section, and the claim was denied." 38 U.S.C. § 1116A(c)(2)(B)(i). But it didn't stop there. Congress went on to require that the denial was "by reason of the claim not establishing that the disease was incurred or aggravated by the service of the veteran." *Id.*

If Congress wanted a veteran to obtain an earlier effective date simply if he or she applied for a covered disability and was denied, it would have stopped at "denied." But it didn't. And we should presume that each word Congress used is there for a reason. *Martinez v. Wilkie*, 31 Vet.App. 170, 176 (2019). Doing just that, I ultimately read the requirement that "the claim was denied by reason of the claim not establishing that the disease was incurred or aggravated by the service of the veteran" as excluding those who were denied, at least in part, because they did not have a disability. As a result, I respectfully dissent.

\* \* \*

When interpreting a statute, "it is no more the court's function to revise by subtraction than by addition." SCALIA & GARNER, *ante* p. 28, at 174. This principle, known as the canon against surplusage, is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Revenue Corp.,* 568 U.S. 371, 386 (2013). That is what we have here.

Congress allowed for retroactive benefits when the "veteran submitted a claim . . . for a disease covered by this section, and the claim was denied by reason of the claim not establishing that the disease was incurred or aggravated by the service of the veteran." 38 U.S.C. § 1116A(c)(2)(B)(i).

If Congress meant to allow an earlier effective date simply because a veteran applied for a covered disability and was denied, it presumably would have stopped at "denied" without specifying a reason for the denial. It didn't. Thus, we must determine what Congress meant by requiring that the denial be "by reason of the claim not establishing that the disease was incurred or aggravated by the service of the veteran."

Generally, in order to establish service connection or service-connected aggravation for a present disability the veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." *Shedden v. Principi*,

381 F.3d 1163, 1166–67 (Fed. Cir. 2004). So how does VA deny claims if a veteran fails to meet one of these required elements?

Consider a veteran who applied and had a current covered disability; he or she would have checked off the first *Shedden* element. And VA could deny the claim only because either there was no in-service event or injury or there was nothing connecting that event to the current disability. In either case, the denial would have been because "the disease was[not] incurred or aggravated by service." 38 U.S.C. § 1116A(c)(2)(B)(i). No matter if there was no in-service injury or event, or if there was no link between such an in-service event and the disease, the conclusion would be same—the disease was not incurred or aggravated by service.

But we can't say the same if the veteran applied for a covered disability and was denied because he or she didn't have a current disability. In such case, VA would not need to get to whether that disability was incurred or aggravated in service. You can't really make a finding that something that does not exist "was incurred or aggravated by service." Put differently, whether a disability was incurred in or aggravated by service is relevant only when the veteran has established the first service connection element—a current disability.

And because section 1116A(c)(2)(B)(i) requires that "the claim was denied by reason of the claim not establishing that the disease was incurred or aggravated by the service of the veteran," I do not see how a denial when the veteran had not established a current disease or disability could qualify for an earlier effective date. Without a current disease or disability to potentially link to service, the reasoning breaks down. Reading that section to mean that it applies as long as the veteran was "denied" renders the entire section where Congress specified the reason for denial superfluous. That is not the result Congress had in mind when it spent time specifying how a claim must have been denied to fall under the earlier effective date provisions.

True, I am not a fan of "excursions beyond the interpretative terra firma of text and context, into the swamps of legislative history." *Lawson v. FMR LLC*, 571 U.S. 429, 459 (2014) (Scalia, J., concurring in part and concurring in judgment). After all, "we are governed by what Congress enacted rather than by what it intended." *Id.* That said, I don't necessarily disagree with the majority's understanding of the Act's purpose. *Ante* at 25 n.17. But if we are to look at legislative intent, we also must consider that Congress wanted to "ensure[] parity for [Blue Water Navy] veterans." H.R. REP. No. 116-58, at 12. In other words, Congress wanted to put blue water veterans

in the same place as other Vietnam-era veterans whose exposure to herbicides has not been questioned for decades.

For this reason, it makes sense that Congress meant to exclude those who did not have a current disability from the earlier effective date provision. If a veteran did not have a current disability, he or she would not have benefited from the presumptions even if those had extended to blue water veterans at the time. Without a disability, the veteran would have been just as denied.

If anything, applying the earlier effective date provision to blue water veterans who did not have a current disability when they applied puts them in a better position than similarly situated boots-on-the-ground veterans who previously applied but did not have a current disability. Such a result does not make sense. To avoid this, Congress specified the reasons for why a veteran must have been previously denied in section 1116A(c)(2)(B)(i) and excluded those veterans whose claims VA denied, at least in part, because they did not have a disability.[25]

This isn't to say that Congress wanted to leave veterans at the whim of how VA phrased a denial many years ago. We know that Congress wanted to put blue water veterans in the same position they would have been if they could have benefited from presumptions. H.R. REP. No. 116-58, at 12. As the majority points out, VA decisions were particularly light on the reasons for a denial until 1990. And it would be absurd to think that a denial would only qualify if it was phrased in the terms used in section 1116A(c)(2)(B)(i). That's not what we want when interpreting a statute. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). But even though a VA decision may be confusing, figuring out why a claimant was denied need not be especially complicated.

If at the time VA knew that a veteran had a disability, then the denial would have been because that veteran failed to meet the second or third *Shedden* element. In other words, VA would have denied the claim because "the disease was [not] incurred or aggravated by service." 38 U.S.C. § 1116A(c)(2)(B)(i). And if the veteran did not have a disease, then VA could not reasonably conclude that "the disease was[not] incurred or aggravated by service." *Id*. Thus, when the VA

---

[25] In his concurrence, Judge Jaquith states that the dissent, in noting that Congress specified the reason for the denial in section 1116A(c)(2)(B)(i), relied on the addition of the word "only." *Ante* at 28-29. Yet, his citations for this assertion are all to the Secretary's brief. I don't add "only" to the statute. Instead, I read it as excluding those veterans whose claims VA denied, *at least in part*, because they did not have a disability. To me, that is the most reasonable reading of the statute, as it is the only interpretation that makes the words after "denied" do any work.

decision is unclear, even a cursory look at the record can tell us whether section 1116A(c)(2)(B)(i) could come into play.

That is what the Board did here. It turned to the July 2014 decision and the record to conclude that VA denied benefits because Mr. Crews did not have ischemic heart disease, a presumptive disability tied to herbicides. R. at 8-11. True, VA later obtained records showing that Mr. Crews did in fact have a qualifying heart disability, but there is no suggestion VA knew that when it denied his claim in 2014.[26] *See* R. at 1535-48. Thus, because the Board's factual finding on why VA denied benefits in 2014 is plausible, I would leave it undisturbed. *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990).

This isn't to say that the Board decision is free of error. One could fault the Board for not adequately discussing whether VA denied Mr. Crews's claim in July 2014 separate from the fact that he did not have a current disability. But even Mr. Crews admits that, if the statute is read to exclude denials when the veteran was denied because he or she did not have a current disability, there is nothing for the Board to do on remand. "[T]he matter is no longer open to reasonable debate." Appellant's Supp. Memo. at 15.

Congress requires that this Court "take due account of the rule of prejudicial error." 38 U.S.C. § 7261(b)(2). This means "looking to the circumstances of the case to see if the alleged error was harmful." *Slaughter v McDonough*, 29 F.4th 1351, 1355 (Fed. Cir. 2022). And even with errors, we may affirm if the result "is not open to debate and the Board on remand could not have reached any other determination on that issue." *See Tadlock v. McDonough*, 5 F.4th 1327, 1336 (Fed. Cir. 2021). This means that I would affirm the Board decision.

---

[26] In his concurrence, Judge Jaquith writes that the RO buried the finding that Mr. Crews did not have a disability because the evidence about this basis for denial was the weakest. *Ante* at 31. Given their workload and their propensity towards boilerplate, I doubt adjudicators put this much strategic thought into RO decisions. At a minimum, Mr. Crews's team of attorneys, with their decades of VA law experience (including within the Agency) have not tried to spin this theory.

At the same time, I acknowledge that evidence existed at the time of the July 2014 RO decision, showing that Mr. Crews had a current disability. But this evidence was not before VA at that time. Judge Jaquith notes that Mr. Crews later wrote that he had included with his September 2013 claim Dr. Cook's private medical records documenting his heart condition. *Ante* at 31. Yet the only documents noted as attachments to Mr. Crews's claim was a Veterans of Foreign Wars power of attorney and the veteran's DD-214. R. at 3246. And the RO's list of evidence in its July 2014 decision—"Private treatment reports, The Sanger Clinic, Dr. Cook (no response was received)," R. at 2343—suggests that VA tried to obtain those records. But VA did not receive a response from Dr. Cook. Although, as Judge Jaquith implies, *ante* at 31, the July 2014 RO decision could have contained some duty-to-assist or duty-to-notify error, the way to remedy that error would have been to appeal the decision, but, unfortunately, Mr. Crews did not; nor does it appear that he alleged CUE in that decision.

When Mr. Crews sought benefits in 2014, VA did not know that he had a current heart disease. Thus, under the statute, the denial of his claim was not because "the disease was[not] incurred or aggravated by service" as required by section 1116A(c)(2)(B)(i). If Congress wanted a contrary result, it would have simply stopped at writing that section after "denied." Because it didn't, Mr. Crews can't benefit from the earlier effective date provisions under section 1116A(c)(2)(B)(i), and I respectfully dissent from the Court's holding.