# United States Court of Appeals for the Federal Circuit

---

**ROBERT E. COOPER, JR.,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2021-2023

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 19-2009, Judge Amanda L. Meredith, Judge Coral Wong Pietsch, Judge Joseph L. Toth.

---

Decided: January 23, 2023

---

CHRIS ATTIG, Attig Curran Steel PLLC, Little Rock, AR, argued for claimant-appellant. Also represented by HALEY SMITH; JUDY JOANNE DONEGAN, The Veterans Consortium Pro Bono Program, Washington, DC.

JOSHUA E. KURLAND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY; JONATHAN KRISCH, Y. KEN LEE,

Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before PROST, CHEN, and STOLL, *Circuit Judges*.

CHEN, *Circuit Judge*.

Robert Cooper appeals a decision by the United States Court of Appeals for Veterans Claims (Veterans Court) affirming a decision by the Board of Veterans' Appeals (Board) that denied Mr. Cooper's request to exclude state unemployment compensation payments from his annual income for purposes of calculating his non-service-connected (NSC) pension. The Veterans Court found that unemployment compensation payments are not excluded from a veteran's annual income under an exception for "donations from public or private relief or welfare organizations." 38 U.S.C. § 1503(a)(1). Because we agree that state unemployment compensation payments are not "donations," we *affirm*.

BACKGROUND

I

A veteran who served during a period of war and is "permanently and totally disabled from non-service-connected disability not the result of the veteran's willful misconduct" may be entitled to an NSC pension. 38 U.S.C. § 1521(a), (j). NSC pensions are need based, and thus the maximum annual rate of pension is "reduced by the amount of the veteran's annual income." *Id.* § 1521(b); *see also Review of the Non-Service-Connected Pension Program: Hearing on H.R. 904, H.R. 2120, H.R. 9000, H.R. 10173, etc. Before the Subcomm. on Comp., Pension, & Ins. of the H. Comm. on Veterans' Affs.*, 95th Cong. 127 (1978) (statement of Rep. G.V. Montgomery, Chairman, Subcomm. on Comp., Pension, & Ins.) ("The non-service-connected pension program is a needs program. The

amount of pension paid . . . relates specifically to the amount of other income which the individual has available to him.").

In general, a veteran's "annual income" includes "all payments of any kind or from any source." 38 U.S.C. § 1503(a). Congress, however, excluded certain categories of payments, including "donations from public or private relief or welfare organizations." *Id.* § 1503(a)(1).

## II

Mr. Cooper served on active duty in the United States Marine Corps from March to September 1972 and from February to April 1973. *Cooper v. McDonough*, 33 Vet. App. 341, 343 (2021). In 2008, the Department of Veterans Affairs (VA) granted Mr. Cooper entitlement to an NSC pension. *Id.* In 2014, the VA notified Mr. Cooper that it had adjusted his income from December 2008 through 2010 based on his collection of unemployment compensation from the state of Wisconsin, which resulted in an overpayment of $13,094. *Id.* Mr. Cooper appealed to the Board, which agreed with the VA that "there is no applicable exclusion" from income for state unemployment compensation and denied Mr. Cooper's request to exclude his unemployment compensation payments from his annual income for NSC pension purposes. *Id.* at 344.

## III

Mr. Cooper appealed to the Veterans Court, arguing that unemployment compensation payments are "donations from public or private relief or welfare organizations" that should be excluded from his annual income. *Id.* The Veterans Court disagreed.

Starting with § 1503(a)'s statutory language and relying on dictionary definitions, the Veterans Court found that "donations" are "voluntary gifts of, typically, money from one party to another and often involve[] a charity." *Id.* at 347. The court also found that "public . . . relief or

welfare organization[]" pertains to "a governmental entity providing aid or assistance to a population in need" or one "formed for the purpose of providing financial or other assistance to individuals or communities in need." *Id.* at 347–48. Applying those definitions, the Veterans Court held that unemployment compensation payments are not donations from public relief or welfare organizations because "the words donation, relief, and welfare in 38 U.S.C. § 1503(a) all connote payments premised upon the recipient's need, whereas unemployment compensation turns on the recipient's employment status without regard to need." *Id.* at 350. Relevant here, the Veterans Court also rejected Mr. Cooper's argument that it would be absurd to include state unemployment compensation payments as income but exclude payments from VA Compensated Work Therapy (CWT) programs. The court explained that, unlike unemployment compensation, Congress specifically excluded CWT payments from income in 38 U.S.C. § 1718(g)(3). *Id.* at 351–52. The Veterans Court thus affirmed the Board's decision to deny Mr. Cooper's request to exclude his state unemployment compensation payments from his annual income. *Id.* at 352–53. Mr. Cooper timely appealed.

## DISCUSSION

We have exclusive jurisdiction to "review and decide any challenge to the validity of any statute or regulation or any interpretation thereof" by the Veterans Court "and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). We review the Veterans Court's interpretation of 38 U.S.C. § 1503(a) de novo. *See Cook v. Wilkie*, 908 F.3d 813, 817 (Fed. Cir. 2018).

"In statutory construction, we begin 'with the language of the statute.'" *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)). "The first step is to determine whether the language at issue has a plain and

unambiguous meaning with regard to the particular dispute in the case." *Barnhart*, 534 U.S. at 450 (internal quotation marks and citation omitted). "The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* (internal quotation marks and citation omitted).

We agree with the Veterans Court that the plain and unambiguous meaning of "donations from public or private relief or welfare organizations" in § 1503(a)(1) does not include unemployment compensation payments. A "donation" is "a gift, esp. to a charity; something, esp. money, that someone gives to a person or an organization by way of help." *Donation*, *Black's Law Dictionary* (11th ed. 2019). A "gift" is a "voluntary transfer of property to another without compensation." *Gift*, *Black's Law Dictionary* (11th ed. 2019). Read together, a "donation" is a voluntary transfer of property to another *without compensation*, especially to a charity. Unemployment compensation does not meet this definition. Individuals are not eligible for unemployment compensation unless they were previously employed and paid taxes—i.e., compensation—to the government. Because receipt of unemployment compensation payments is contingent on prior compensation to the government, unemployment compensation payments are not donations.

To explain, Congress incentivized states to establish state unemployment compensation programs through a tax offset in the Social Security Act of 1935. *See* Social Security Act of 1935, Pub. L. No. 74-271, 49 Stat. 620; *see also* Soc. Sec. Admin., *Annual Statistical Supplement to the Social Security Bulletin* 65 (2013). Although the details were left to state discretion, state unemployment compensation programs are generally "modeled after an actuarial insurance scheme." Gillian Lester, *Unemployment Insurance and Wealth Redistribution*, 49 UCLA L. Rev. 335, 343 (2001); *see also Charity Versus Social Insurance in Unemployment*

*Compensation Laws*, 73 Yale L.J. 357, 368–70 (1963).[1] Thus, in each state, an employee, or their employer on their behalf, pays payroll taxes to the state and federal government while that individual is employed, and in return, the employee collects payments from the state government if they become unemployed through no fault of their own. *See* Lester, *supra*, at 340–48. Because receipt of unemployment compensation payments requires prior contribution from the employee to the government in the form of payroll taxes, unemployment compensation payments are not gifts, and thus they are not donations.

Put another way, an individual cannot receive unemployment payments *unless* they were previously employed and paid into the state's unemployment fund through taxes. Soc. Sec. Admin., *supra*, at 66 ("Unemployment benefits are available as a matter of right (without a means test) to unemployed workers *who have demonstrated their attachment to the labor force by a specified amount of recent work or earnings in covered employment*." (emphasis added)); Lester, *supra*, at 346 ("Eligibility is limited to workers who have some minimum level of employment experience and continuity . . . ."). Indeed, most states use some minimum threshold of earnings during a "base period" preceding application for benefits in order to qualify

---

[1] For the same reason, unemployment compensation is often referred to by state and the federal governments as "unemployment insurance." Soc. Sec. Admin., *supra*, at 65 ("Unemployment Insurance"); Wis. Stat. § 108 ("Unemployment Insurance"); *see also* Lester, *supra*, at 340–41; *Unemployment Insurance, Black's Law Dictionary* (11th ed. 2019) ("A type of social insurance that pays money to workers who are unemployed for reasons unrelated to job performance. Individual states administer unemployment insurance, which is funded by payroll taxes. *Also termed unemployment compensation*." (emphasis added)).

for unemployment compensation. Lester, *supra,* at 346–47; *see also id.* at 346 ("[Unemployment insurance], in contrast with welfare . . . provide[s] benefits only to those workers who have 'earned' them through some minimum level of past workforce participation."); Soc. Sec. Admin., *supra,* at 66 ("A worker's monetary benefit rights are based on his or her employment in covered work over a prior reference period called the *base period . . . .*"). In sum, we find that unemployment compensation payments are not donations within the meaning of 38 U.S.C. § 1503 and instead are more akin to an insurance contributory program.

Mr. Cooper's arguments fail to convince us that this statutory interpretation is incorrect. We first reject his argument that unemployment compensation is a noncontributory benefit—i.e., a benefit that does not require prior compensation to the government—because it is often funded through taxes on businesses rather than individuals and does not need to be reimbursed by the recipient. Appellant's Br. 17, 33–34, 36. But the fact that unemployment compensation payments need not be reimbursed does not make them a noncontributory benefit. Regardless of whether it is the employees or their employers that make advance payments into the program, unemployment compensation payments are paid *based on those prior contributions*; Mr. Cooper's no-reimbursement argument is thus beside the point.

We also perceive no substantive difference based on whether the employee or employer pays the taxes that fund unemployment compensation. First, employers do not pay payroll taxes for individuals not in their employ. *See, e.g.*, Wis. Stat. § 108.01(1) (employers "financ[e] benefits for [their] own unemployed workers"). Unemployment compensation programs are funded through taxes tied to a specific employee's wages and employment term. Second, even when employers pay taxes to fund unemployment compensation programs, research indicates that employers pass

those payments on to employees through lower wages. Lester, *supra*, at 379 (citing research finding that a tax on labor like the unemployment compensation tax is ultimately borne by workers rather than employers); *see also* Cong. Budget Off., *Unemployment Insurance in the Wake of the Recent Recession*, Pub. No. 4525, at 13 (Nov. 2012) ("Although levied as a payroll tax on employers, the portion of the cost of [unemployment insurance] taxes that does not vary among firms within a local labor market is ultimately paid by workers in the form of reduced wages."). Third, applying this distinction in practice would mean that veterans in states where employers pay the applicable taxes would be able to exclude unemployment compensation payments as "donations," but veterans in states where employees pay the taxes would not. We are not convinced that Congress intended disparate outcomes for veterans depending on their state of residence.

We further reject Mr. Cooper's attempt to bolster his argument by comparing unemployment compensation to the noncontributory programs listed in 38 C.F.R. § 3.262(f), which are not included in a veteran's annual income for NSC pension purposes. Appellant's Br. 28. Even assuming, for argument's sake, that 38 C.F.R. § 3.262(f) is relevant here, Mr. Cooper misapplies that regulation's distinction between contributory programs, like old age and survivor's insurance and disability insurance (OASDI), and noncontributory programs, like supplemental security income (SSI) and aid to dependent children (now called Temporary Assistance for Needy Families (TANF)). 38 C.F.R. § 3.262(f); Soc. Sec. Admin., *supra*, at 60. OASDI, for example, provides monthly benefits to qualified retired and disabled workers, their dependents, and survivors. Soc. Sec. Admin., *supra*, at 9. An individual and their employer contribute to the OASDI fund through payroll taxes while the individual is employed, and, in turn, the individual receives payments from the government when they retire based on their prior contributions, not their need. *Id.*

In contrast, SSI provides monthly payments to adults and children with a disability or blindness who have income and resources below specific financial limits. *Supplemental Security Income*, Soc. Sec. Admin., https://www.ssa.gov/benefits/ssi (last visited Dec. 16, 2022). Unlike OASDI, SSI is "funded by general tax revenues (not Social Security taxes)," and is distributed based on need, not employment status. *Id.*

We find that unemployment compensation payments are more similar to contributory programs like OASDI than noncontributory programs like SSI. Like OASDI, an individual or their employer pays into the unemployment compensation program while the individual is employed, and the individual receives payments based on those prior contributions and their employment status, not their need. It is unlike SSI, for which the payments come from a general fund with no relationship to the recipient and are paid based on need, not prior employment. Thus, we disagree with Mr. Cooper's argument that unemployment compensation should be excluded from his annual income because it is similar to the noncontributory programs listed in 38 C.F.R. § 3.262(f).

Mr. Cooper also asserts that unemployment compensation payments should be considered donations because the word "donation" implies giving something of value to help a person in a time of need or to relieve suffering. Appellant's Br. 33–34, 37–38. Mr. Cooper's argument, however, ignores the fact that unemployment compensation is paid based on the fact that an individual is unemployed, regardless of their need. Indeed, Congress intended unemployment compensation to provide "partial replacement of wages" to allow a recipient to search for other employment "without having to resort to relief" or "turn[] to welfare, or private charity." *Cal. Dep't of Hum. Res. Dev. v. Java*, 402 U.S. 121, 131–32 (1971) (citations omitted). Congress specifically declined to institute a "means" or "needs" test to receive unemployment compensation payments to avoid

the "stigma of charity." *See* H.R. Rep. No. 74-615, at 7 (1935) ("Unemployment compensation is greatly preferable to relief because it is given without any means test."); S. Rep. No. 74-268, at 11 (1935) ("Unemployment compensation differs from relief in that payments are made as a matter of right, not on a needs basis . . . ."); *see also Charity Versus Social Insurance*, *supra*, at 359 ("[B]oth the techniques of giving charity, particularly the 'means' or 'needs' test, and the psychological impact of receiving 'charity,' undermined the self-respect and independence of the unemployed."); Lester, *supra*, at 341–42 ("[M]uch of the rhetoric surrounding passage of the legislation . . . augured that [unemployment insurance] would preserve the dignity of working people who lost their jobs by distinguishing them from welfare recipients."). The result was a two-tiered social safety net: (1) unemployment compensation, which "was designed for workers with stable labor market attachment, without regard to their means," and (2) welfare, which was "designed for workers lacking attachment, and [therefore] was based on means." *See* Lester, *supra*, at 343. Thus, unemployment compensation payments are paid regardless of need, and we reject Mr. Cooper's argument.

We also are not persuaded by Mr. Cooper's arguments, based on various hypotheticals, that our holding would produce disparate and absurd outcomes that run contrary to congressional intent. Appellant's Br. 19–24. Mr. Cooper again confuses unemployment compensation with welfare programs, like SSI and TANF. Mr. Cooper's first hypothetical asks us to compare two veterans—one receiving unemployment compensation and one who is employed but who also receives TANF payments. Mr. Cooper argues that the result of our holding would be that "the *more* needy of the two veterans – the one without any income at all – is getting the lower NSC pension amount." Appellant's Br. 20. This is doubly wrong. First, the veteran receiving unemployment compensation is not without income. The veteran receives income through their unemployment

compensation payments.  Second, eligibility for TANF is based on an individual's income and wealth, and Mr. Cooper does not point us to any statute or regulation that treats income from wages and income from unemployment compensation differently in determining TANF eligibility.  Thus, in both cases, wages and unemployment compensation are counted in the veteran's annual income, and any TANF payments are excluded from the veteran's income as donations.

Mr. Cooper then asks us to consider a hypothetical in which an employed veteran collecting TANF loses his job and begins collecting unemployment compensation.  Appellant's Br. 20–21.  Mr. Cooper asserts that the veteran could no longer exclude the TANF payments from their annual income for NSC pension purposes, but this is incorrect.  TANF payments are excluded as donations, and Mr. Cooper again cites no statute or regulation indicating that an individual who loses their job and collects unemployment would be ineligible for TANF.

Finally, Mr. Cooper asks us to compare two hypothetical veterans who both lose their employment, but one veteran collects state unemployment and the other receives the same amount in donations from a private community welfare organization.  Mr. Cooper argues that there is "nothing in the language of [§ 1503(a)(1)] that suggests Congress intended to incentivize and reward veterans who receive private relief from unemployment with a higher NSC pension rate, and punish veterans who receive public relief from unemployment with a lower NSC pension rate."  Appellant's Br. 22.  We disagree.  Congress explicitly excluded donations from private relief organizations from income under § 1503(a)(1).  In sum, we are not convinced by Mr. Cooper's hypotheticals that our holding produces disparate and absurd outcomes.

Mr. Cooper also revives his argument made to the Veterans Court that unemployment compensation payments

and CWT payments are similar, and thus it would be absurd to exclude CWT payments from a veteran's annual income but not exclude unemployment compensation. Appellant's Br. 39–41. The two programs, however, are not similar. Unemployment compensation, as already explained, is earned through prior employment, and as the Supreme Court noted, it was intended to stabilize demand across the economy while providing recipients time to search for gainful employment without resorting to relief or welfare. *Java*, 402 U.S. at 131–33. In contrast, CWT is a "vocational rehabilitation program" that "provide[s] support to Veterans living with mental illness or physical impairment with barriers to employment to secure and maintain community based competitive employment." *Information for Veterans – Compensated Work Therapy*, Veterans Health Admin., https://www.va.gov/HEALTH/cwt/veterans.asp (last visited Dec. 16, 2022). Congress recognized that a veteran might not be motivated to participate in CWT if the money earned reduced other VA payments, including payments from an NSC pension, and thus explicitly excluded CWT payments from a veteran's income for NSC pension purposes. 38 U.S.C. § 1718(g)(3); *see also* H.R. Rep. No. 102-622, at 8 (1992) ("[L]oss of earnings as a result of participating in a rehabilitative program would serve as a disincentive for entering or continuing the program and would therefore defeat the program's therapeutic purpose. Further, reduction or termination of VA benefits as a result of earnings from the program might decrease a veteran's motivation." (internal quotations omitted)). This same logic does not apply to unemployment compensation, where there is no need to incentivize a veteran to participate. Congress explicitly excluded payments from CWT as income, but it has not done so for unemployment compensation, and thus it is not absurd to treat the two programs differently.

Two final arguments are worth addressing. Mr. Cooper asks the court to apply the pro-veteran canon. Appellant's

Br. 32. Under the pro-veteran canon, "interpretive doubt is to be resolved in the veteran's favor." *Brown v. Gardner,* 513 U.S. 115, 118 (1994). Because there is no interpretive doubt in this case, the pro-veteran canon does not apply. *Rudisill v. McDonough,* No. 2020-1637, 2022 WL 17685435, at \*6 (Fed. Cir. Dec. 15, 2022) (en banc) (explaining that the pro-veteran canon "plays no role where the language of the statute is unambiguous").

Mr. Cooper also argues that the Veterans Court erred when it relied on a tax law principle from *Abrahamsen v. United States*, 228 F.3d 1360, 1362–63 (Fed. Cir. 2000). Appellant's Br. 24–29. First, we are not convinced that the Veterans Court relied on *Abrahamsen*, for it never invoked that opinion in its analysis after its initial citation. Second, any perceived error would be harmless. As we explained above, unemployment compensation payments are not "donations" within the meaning of § 1503. That conclusion relies on the plain text of the statute; it does not rely on a tax law principle. Thus, the Veterans Court's judgment is correct, and even if the Veterans Court erred, that error does not compel reversal. *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1345 n.1 (Fed. Cir. 2009).

## CONCLUSION

We have considered Mr. Cooper's remaining arguments and find them unpersuasive. For the foregoing reasons, we find that unemployment compensation payments are not "donations" within the meaning of 38 U.S.C. § 1503, and thus we affirm.

**AFFIRMED**