# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-4692

ARTHUR L. HAIRSTON, SR., APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided April 20, 2023)

*Kenneth M. Carpenter*, of Topeka, Kansas, was on the brief for the appellant.

*Catherine C. Mitrano*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; *Christopher W. Wallace*, Deputy Chief Counsel; and *Ronen Morris*, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, MEREDITH, and TOTH, *Judges*.

TOTH, *Judge*: Air Force veteran Arthur Hairston appeals a Board decision that denied him a non-service-connected pension. As a need-based benefit for older or disabled veterans, a pension, unlike disability benefits, is not contingent on a veteran suffering from a condition related to service; instead, it is based on a veteran's annual income and net worth. *See Cooper v. McDonough*, 33 Vet.App. 341, 345 (2021), *aff'd*, 57 F.4th 1366 (Fed. Cir. 2023). A veteran's "annual income" cannot exceed the maximum annual pension rate (MAPR). 38 U.S.C. § 1521(b), (c).

At issue in this case is whether a spouse's income generally must be included when calculating a veteran's annual income. A VA regulation clearly says yes, but Mr. Hairston disputes the regulation's meaning, contends it is inconsistent with its authorizing statute, and maintains that it has been superseded by other regulatory provisions. Finding no merit to any of these arguments, the Court affirms the Board's decision denying non-service-connected pension benefits on grounds that the veteran's annual income, including his wife's earnings, exceeds the relevant MAPR.

## I. BACKGROUND

### A. Pension Eligibility

The improved pension program was established by Congress in 1979 and contains several criteria for eligibility. Veterans' and Survivors' Pension Improvement Act of 1978, Pub. L. No. 95-588, 92 Stat. 2497. (The improved pension program was preceded by two other programs, commonly called "section 306 pension" and "old-law pension." *Dent v. McDonald*, 27 Vet.App. 362, 365 n.2 (2015). All subsequent references to "pension" are to the current improved pension program.) The benefit is payable "to veterans of a period or periods of war because of nonservice-connected disability or age." 38 C.F.R. § 3.3(a)(3) (2018). (Unless otherwise noted, we cite the 2018 versions of regulations, which were applicable to the period of pension at issue in this case.) Veterans may receive pension if they (1) had 90 days or more of active service in the military during a period of war; (2) meet the net worth requirements of 38 C.F.R. § 3.274 and do not have an annual income in excess of the MAPR; and (3) are age 65 or older or are permanently and totally disabled because of non-service-connected disability not due to their own willful misconduct. *Id.*

Net worth, for pension purposes, refers to "the sum of a claimant's or beneficiary's assets and annual income." 38 C.F.R. § 3.274(b)(1) (2018). A veteran's annual income includes "[p]ayments of any kind from any source" within the 12-month period prior to VA's receipt of the pension application, unless the payment is specifically excluded from income. 38 C.F.R. § 3.271(a); *see* 38 C.F.R. § 3.272. Calculation of a veteran's annual income "will include the annual income of dependents as required by law." 38 C.F.R. § 3.274(b)(3) (referencing 38 C.F.R. §§ 3.23(d)(4), (d)(5) and 3.24). The net worth limit between December 1, 2018, and June 17, 2020, ranged from $127,061 to $129,094.[1]

As for the MAPR, it is based on a variety of considerations, including how many dependents a veteran has, if a veteran needs aid and attendance or is permanently housebound, or if a veteran is married to another veteran who is also eligible for pension. *See* 38 C.F.R. § 3.23(a)(1)-(4). The MAPR is increased whenever there is an increase in benefits under title II of the Social Security Act. 38 U.S.C. § 5312(a); 38 C.F.R. § 3.23(a). Such increases are published in

---

[1] *See Past Rates: 2019 VA Pension Rates for Veterans*, U.S. DEP'T OF VETERANS AFFAIRS, https://www.va.gov/pension/veterans-pension-rates/past-rates-2019/; *Past Rates: 2020 VA Pension Rates for Veterans*, U.S. DEP'T OF VETERANS AFFAIRS, https://www.va.gov/pension/veterans-pension-rates/past-rates-2020/.

the "Notices" section of the Federal Register. 38 C.F.R. § 3.23(a). Between December 1, 2018, and June 17, 2020, the MAPR ranged from $17,724 to $18,008. *See* 84 Fed. Reg. 10,392 (Mar. 20, 2019) (noting 2.8% cost-of-living increase in Social Security benefits for 2019); 85 Fed. Reg. 789 (Jan. 7, 2020) (noting 1.6% cost-of-living increase in Social Security benefits for 2020); *see also supra* note 1. The rate of pension payable is equal to the MAPR minus the veteran's countable annual income. 38 C.F.R. § 3.23(b). VA defines a veteran's annual income as the sum of the veteran's income, the annual income of the veteran's spouse, and the annual income of the veteran's children when, subject to qualifications not relevant here, the children are in the veteran's custody or the veteran is reasonably contributing to their support. 38 C.F.R. § 3.23(d)(4).

### B. Facts

Mr. Hairston served in the Air Force from 1974 to 1976, and he has received pension benefits on and off since 1992. The veteran's pension payments were first suspended in 2001 due to his incarceration. His benefits resumed in January 2015 after he was released from prison. In early 2016, Mr. Hairston notified VA that he had secured full-time employment, and his pension payments were suspended a second time.

In December 2018, he reapplied for pension benefits. In his application, he reported that his wife's annual income was $20,494. Meanwhile, an inquiry to the Social Security Administration (SSA) found that the veteran was receiving monthly SSA disability payments of $573, which amounts to a yearly income of $6,876. The regional office denied pension benefits, finding that Mr. Hairston's countable income of $27,370—that is, his and his wife's combined annual income—exceeded the applicable MAPR. Mr. Hairston appealed to the Board, which also denied the claim. Given Mrs. Hairston's yearly earnings of $20,494, the Board found that the veteran's countable income exceeded the 2019 MAPR of $17,724 for a veteran with one dependent.

He then appealed to the Court, where he raises three arguments. First, he contends that the Board misunderstood or misapplied § 3.23(b) by including his wife's income in its calculation of his countable income. Second, he asserts that § 3.23(d)(4), which defines a veteran's annual income, is invalid because it does not comport with its authorizing statute, 38 U.S.C. § 1521. And third, he argues that §§ 3.274 and 3.275, which impose a net worth limit on pension eligibility, superseded § 3.23's pension rate reduction scheme such that both the net worth and income limits cannot be applied to a single veteran. The Court addresses each argument, but we begin by explaining why the regulatory provision that explicitly includes a spouse's income within a

3

veteran's countable income is valid. With that validity established, the remaining arguments are easily defused.

## II. ANALYSIS

### A. Validity of § 3.23(d)(4)

The veteran's principal argument is that VA's definition of a "[v]eteran's annual income" in § 3.23(d)(4) is not consistent with the scheme established by Congress. To support this argument, he relies on 38 U.S.C. § 1521(c), which provides:

> If the veteran is married and living with or reasonably contributing to the support of such veteran's spouse, or if there is a child of the veteran in the custody of the veteran or to whose support the veteran is reasonably contributing, pension shall be paid to the veteran at the annual rate of $15,493, unless the veteran is entitled to pension at the rate provided by subsection (d)(2), (e), or (f) of this section. If the veteran has two or more such family members, such annual rate shall be increased by $2,020 for each such family member in excess of one. The rate payable shall be reduced by the amount of the veteran's annual income and, subject to subsection (h)(1) of this section, the amount of annual income of such family members.

The key here, in Mr. Hairston's view, is the final sentence's reference to subsection (h)(1), which states:

> In determining the annual income of a veteran, if there is a child of the veteran who is in the custody of the veteran or to whose support the veteran is reasonably contributing, that portion of the annual income of the child that is reasonably available to or for the veteran shall be considered to be income of the veteran, unless in the judgment of the Secretary to do so would work a hardship on the veteran.

38 U.S.C. § 1521(h)(1).

Because section 1521(c) makes the extent to which family members' income can reduce a veteran's pension rate "subject to" (h)(1), and because (h)(1) pertains only to the annual income of a child and not that of a spouse, Mr. Hairston reasons that Congress did not intend to "attribute income" from his wife to his annual income. Appellant's Br. at 11. Put differently, he argues that subsection (h)(1) means that "the rate payable shall be reduced by the amount of the veteran's annual income **only** if there is a child of the veteran who is in the custody of the veteran . . . and **only then** will that portion of the annual income of the child that is reasonably available to or for the veteran be considered to be income of the veteran." *Id.* (boldface and underlining in original). Thus, he argues, § 3.23(d)(4)'s inclusion of spousal income is not authorized by section 1521(c).

When discerning the meaning of a statute, the Court always begins with the text. *Ross v. Blake*, 578 U.S. 632, 638 (2016); *Lacey v. Wilkie*, 32 Vet.App. 71, 75 (2019). If the text is unambiguous, its plain meaning controls and the Court's inquiry is finished. *King v. Burwell*, 576 U.S. 473, 486 (2015); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). When examining the text, the Court looks to "'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Lacey*, 32 Vet.App. at 75 (quoting *Robinson*, 519 U.S. at 341). The crux of the veteran's appeal turns on the final sentence of section 1521(c), so we begin there.

The Court first considers the text's plain meaning. The last line of subsection (c) refers not simply to "family members" but to "*such* family members." "Such is 'a pointing word'" that refers "'to a clear antecedent.'" *Jensen v. Shulkin*, 29 Vet.App. 66, 76 (2017) (quoting GARNER'S MODERN AMERICAN USAGE 783 (3d ed. 2009) (capitalization altered)). The phrase appears twice in the next to last sentence of section 1521(c) (once in the plural and once in the singular): "If the veteran has two or more such family members, such annual rate shall be increased by $2,020 for each such family member in excess of one." The obvious antecedents for both of these "such" references are the family members listed in the first line of subsection (c): a spouse with whom the veteran lives or to whose support the veteran reasonably contributes and any children in the veteran's custody or to whose support the veteran reasonably contributes. When a veteran has at least two "such family members," the veteran is entitled to a higher rate of pension, just as a veteran with at least one such family member is entitled to a higher rate of pension than a veteran without any. *Compare* 38 U.S.C. § 1521(b), *with* 38 U.S.C. § 1521(c).

But the caveat for these more generous pension rates is that they will be reduced by the "amount of annual income of such family members." Quite simply, there is no reasonable interpretation of the statute that reads the phrase "such family members" to first mean one thing (a spouse and children) and then to mean something different (only children) just one sentence later. *See Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears."); *Rainey v. MSPB*, 824 F.3d 1359, 1362 (Fed. Cir. 2016) ("[N]ormally identical words used in different parts of the same act are intended to have the same meaning. That principle applies with special force when the identical words are used in the same statutory section and is at its most vigorous when a term is repeated within a given sentence." (citations and quotation marks omitted)).

The "subject to" clause in subsection (c)'s last sentence does not indicate a departure from the consistent-meaning principle. "Subject to" is a phrasal verb that means being dependent or contingent on something else. BLACK'S LAW DICTIONARY 1723 (11th ed. 2019). Here, the "subject to" phrase is set off by a pair of commas after the word "and," indicating that the subsequent clause—"the amount of income of such family members"—is the language "subject to" or dependent on subsection (h)(1). That provision limits the portion of a child's income considered to be the veteran's income to that which "is reasonably available to or for the veteran . . . unless in the judgment of the Secretary to do so would work a hardship on the veteran." 38 U.S.C. § 1521(h)(1). Thus, the countable annual income of a veteran's children may be limited by (h)(1) while the countable annual income of a veteran's spouse is not. In other words, (h)(1) doesn't limit the type of "such family members" whose annual income must be used to reduce the pension rate; instead, it limits the amount of income of one type of such family members (children) whose annual income must be used. And, in fact, the absence of any sort of (h)(1)-like limit on countable spousal income reinforces that *all* income of a spouse is treated as part of the veteran's income for purposes of calculating pension rates. *Cf.* 38 U.S.C. § 1521(h)(2) (capturing more countable spousal income by treating a spouse as "living with" a veteran "even though they reside apart, unless they are estranged").

That section 1521(c) requires consideration of a spouse's annual income when reducing the applicable pension rate is reinforced by related statutory provisions. Congress authorized the Secretary, "[a]s a condition of granting or continuing pension under section 1521," to require a veteran to submit adequate information, proofs, and evidence as to the annual income of the veteran's spouse. 38 U.S.C. § 1506(1)-(3). But this data plays no role in setting the initial rate of pension awarded to a married veteran—that turns only on whether the spouse lives with or receives support from the veteran. Rather, this data may be used to calculate the proper reduction of the pension rate.

Finally, understanding "such family members" to include both a spouse and children comports with the pension program's family-wide, need-based focus and structure. Because entitlement to pension turns on the specific financial circumstances of a particular veteran, the pension rate considers all types of income available to the veteran. *See Cooper v. McDonough*, 57 F.4th 1366, 1367–68 (Fed. Cir. 2023). When a veteran receives pension at an increased rate based on the number of family members the veteran is responsible for supporting—as the structure

6

of section 1521 and related provisions plainly shows it does—it is only logical that the income of those family members generally be treated as the income of the veteran. Put differently, the pension scheme regards the family unit as a whole.[2] *See, e.g.*, 38 U.S.C. § 1522 (including the annual income of the veteran and the veteran's spouse and children in calculations of the corpus of the veteran's estate). Indeed, Mr. Hairston acknowledges that section 1521(c) counts the income of a veteran's child (or the combined income of a veteran's children) as that of the veteran for purposes of reducing the applicable pension rate. But under his interpretation of section 1521(c) as excluding the income of a veteran's spouse from the overall income of the family, a veteran would still be able to receive monthly need-based pension even if spousal income were, say, $100,000 a year. Such an interpretation would be absurd, a sure sign that it is wrong. *See Atencio v. O'Rourke*, 30 Vet.App. 74, 83 (2018).

Accordingly, the Court concludes that 38 U.S.C. § 1521(c) clearly requires that the payable pension rate be reduced by a spouse's income because it is countable as part of a veteran's annual income. Because § 3.23(d)(4) simply makes this clear statutory mandate pellucid, it is a valid regulation and fully applicable to Mr. Hairston's pension claim.

### B. Effect of Amendments to Regulations

Mr. Hairston next argues that § 3.23's mandatory reduction of the MAPR based on countable annual income became a dead letter following 2018 amendments to regulatory provisions that limit entitlement to pension based on net worth. By statute, the Secretary is required to

> deny or discontinue the payment of pension to a veteran . . . when . . . the corpus of the estates of the veteran and of the veteran's spouse is such that under all the circumstances, including consideration of the annual income of the veteran, the veteran's spouse, and the veteran's children, it is reasonable that some part of the corpus of such estates be consumed for the veteran's maintenance.

38 U.S.C. § 1522(a). The current version of this provision is materially identical to what Congress enacted in 1979 and labeled the "Net worth limitation." Pub. L. No. 95-588, § 107, 92 Stat. at 2502.

---

[2] For those who find legislative history persuasive, we have previously quoted the "Joint Explanatory Statement prepared by the House and Senate Committees on Veterans' Affairs that accompanied the conference report on Public Law 95-588," which stated: "Under both the House bill and the Senate amendment, there would be a maximum annual rate, reduced dollar for dollar by the other income of the pensioner, including generally, the income of all family members for whom additional pension is paid . . . ." *Johnson v. Brown*, 9 Vet.App. 369, 373 (1996).

And VA originally implemented the statutory text more or less verbatim in § 3.274. *See* 44 Fed. Reg. 45,930, 45,938 (Aug. 6, 1979).

In 2015, VA proposed to amend § 3.274(a) because the Agency realized it had never articulated an objective, "bona fide net worth limit" and, "under current regulations, claimants who are not actually in need may qualify for these needs-based benefits." 80 Fed. Reg. 3840, 3840–41 (Jan. 23, 2015). The rule, finalized in 2018 and still in effect, set the net worth limit at $123,600 and specified that it would be "increased by the same percentage as the Social Security increase whenever there is a cost-of-living increase in benefit amounts payable under section 215(i) of title II of the Social Security Act." 38 C.F.R. § 3.274(a) (2022); *see* 83 Fed. Reg. 47,246, 47,269 (Sept. 18, 2018). The revised regulation also makes even clearer that net worth is "the sum of a claimant's . . . assets and annual income" and that a claimant's annual income "include[s] the annual income of dependents as required by law." 38 C.F.R. § 3.274(b)(1), (3). In addition, the 2018 amendments revised § 3.275 by clarifying how VA determines the asset amount for net worth purposes. 83 Fed. Reg. at 47,271; *see* 80 Fed. Reg. at 3846–47.

This is the background for Mr. Hairston's argument that the 2018 revisions to §§ 3.274 and 3.275, by setting a bright-line net worth limit, superseded § 3.23's requirement to reduce the MAPR based on countable income.[3] He avers that, "[u]nder this bright line, it is *only* appropriate to reduce the pension benefit amount when the veteran's net worth exceeds the newly adopted bright-line net worth limit for pension entitlement." Appellant's Br. at 15 (emphasis added). Unless § 3.23 is understood to have been superseded, the veteran contends, we would be left with "the absurd result that there are two different income criteria for entitlement to non-service-connected pension." Reply Br. at 1.

But we see no support for this reasoning or that VA intended to supersede the governing regulations. Where the text permits, there is "a preference for finding a reasonable interpretation of the regulations that does not create unnecessary conflict between them." *Rice v. Martin Marietta Corp.*, 13 F.3d 1563, 1568 (Fed. Cir. 1993). The 2018 amendments to §§ 3.274 and 3.275 did not create the concept of a net worth limit; they simply defined it with a clarity that VA realized had been lacking. (The Agency's action was not prompted by any statutory change from Congress.)

---

[3] Mixed in with this regulatory argument, Mr. Hairston asserts in passing that nowhere, including in section 1521, does Congress authorize the reduction of pension paid to a veteran based on annual income. Appellant's Br. at 13–14. This assertion is contradicted by the plain terms of section 1521, which recites Congress's mandate for VA to do precisely that.

The net worth limit and the pension rate reduction scheme work harmoniously to ascertain whether need-based pension benefits are warranted. The former serves as a bar to entitlement while the latter determines the amount of pension a veteran not barred by the net worth limitation may receive. The contrary reading, quite apart from being an unreasonable interpretation of §§ 3.274 and 3.275, construes one regulatory requirement as impliedly repealing another. That kind of construction is disfavored. *See Martinez v. Wilkie*, 31 Vet.App. 170, 176 (2019).

Second, and just as important, the supersession the veteran suggests would be inconsistent with the terms of the relevant statutes and thus invalid. A regulation "cannot supersede the language chosen by Congress." *Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980). Both a net worth limitation (section 1522) and a pension rate reduction scheme (section 1521) have been mandated by Congress as part of the pension program since it was established in 1979. *See* Pub. L. No. 95-588, §§ 106, 107, 92 Stat. at 2500–02. So, even if VA had intended to supersede the pension rate reduction scheme in § 3.23, it would have been barred from doing so by section 1521. When there is a reasonable alternative interpretation, we will not construe a regulation to conflict with its authorizing statute. *See Talley v. Derwinski*, 2 Vet.App. 282, 287 (1992).

In short, §§ 3.23, 3.274, and 3.275 operate together to implement the pension program Congress established, and the Board didn't err in applying the relevant aspects of those rules here.

## C. Application of 38 C.F.R. § 3.23(b)

Having established § 3.23's original validity and continued vitality, we turn finally to Mr. Hairston's argument that the Board simply misunderstood it. He contends that the phrase "countable annual income of the veteran" in § 3.23(b) means just that: only the *veteran's* income is countable. Because nothing within subsection (b) itself says that "income of the veteran" includes income of the veteran's spouse, Mr. Hairston argues that the Board erred in reducing his pension rate by considering his wife's wages. Of course, as noted above, subsection (d) supplies "[d]efinitions of terms used in this section" and plainly says that the annual income of the veteran "*includes* . . . the annual income of the veteran's dependent spouse." 38 C.F.R. § 3.23(d)(4) (emphasis added). Thus, (d)(4) would seem to conclusively dispose of the veteran's argument.[4] But Mr. Hairston instead tries to refute (d)(4)'s applicability by asserting that "a definition cannot

---

[4] We note that, although subsection (d)(4) explains the meaning of the term "[v]eteran's annual income," the term used in subsection (b) is "annual income of the veteran." Mr. Hairston has not raised this variation as a problem, and we take the two terms to be synonymous.

9

import text to support a definition which is absent from the text of that portion of the regulation it purports to be defining." Appellant's Br. at 9.

This assertion borders on frivolous. Importing into a provision a meaning that is otherwise not explicit from the literal text of that provision is the whole point of specifying a legal definition for a word or term. "The main purpose of a definition is to achieve clarity without needless repetition." OFF. OF THE FED. REG., REGULATORY DRAFTING GUIDE: DEFINITIONS.[5] Even if legal writing experts would say the use of special definitions in legal texts is excessive, the practice is ubiquitous among drafters of statutes and regulations. *See, e.g.*, 38 U.S.C. § 101; 38 C.F.R. § 3.1 (2022). It is, in other words, a valid way of achieving precision without prolixity.

*Sucic v. Wilkie*, 921 F.3d 1095 (Fed. Cir. 2019), provides a useful example of this principle. Congress provided a specific definition for the word "child" to apply generally whenever the word is used in title 38. 38 U.S.C. § 101(4). The statutory definition conditioned who can qualify as a "child" for VA benefits purposes on several factors, such as age, marital status, and student-status. Attempting to cram those qualifications into every statutory provision where the word "child" appears would make the law unreadable. In *Sucic*, the adult children of a veteran sought to capitalize on the absence of any explicit age restriction accompanying the word "children" in the specific text of the law governing accrued benefits to argue that they were entitled to such benefits. But the Federal Circuit rejected such an attempted end run around section 101(4). Where "'a statute includes an explicit definition, we must follow that definition, even if it varies from a term's ordinary meaning.'" *Sucic*, 921 F.3d at 1099 (quoting *Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 776 (2018)).

And provided that the Agency does not define a word or phrase in a manner that conflicts with an authorizing statute, the rule that an explicit definition trumps ordinary meaning applies in the regulatory context as well. *See Otero-Castro v. Principi*, 16 Vet.App. 375, 380 (2002). As explained above, Congress instructed that a spouse's income must be included as part of the veteran's income when determining entitlement to pension. The only issue here is the clarity of § 3.23's language. We conclude that the term "annual income of the veteran" in § 3.23, as defined by § 3.23(d)(4), clearly includes the annual income of a spouse.[6] Accordingly, the Board did not

---

[5] https://www.archives.gov/federal-register/write/legal-docs/definitions.html.

[6] In his reply brief, Mr. Hairston raised an argument for the first time that his spouse is not a "dependent" spouse. Reply Br. at 4-5. The Court has discretion to address such late-raised arguments, and we decline to do so here.

err in its application of § 3.23(b) when it counted Mr. Hairston's wife's wages as part of his annual income.

Finally, we briefly note that the Board only discussed the veteran's income in terms of the 2019 MAPR, despite issuing its decision after the 2020 MAPR of $18,008 was released. However, this error is nonprejudicial because his wife's undisputed annual income still exceeds the 2020 MAPR. *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to take due account of the rule of prejudicial error); *see also Tadlock v. McDonough*, 5 F.4th 1327, 1336 (2021) ("[T]he Veterans Court may affirm on a ground not considered by the Board and the VA if it is clear that the factual basis for such conclusion is not open to debate and the Board on remand could not have reached any other determination on that issue.").

## III. CONCLUSION

Based on the foregoing, the June 17, 2020, Board decision is AFFIRMED.

---

*See Carbino v. West*, 168 F.3d 32, 34–35 (Fed. Cir. 1999).